Odette **MYRTIL** a/k/a Odette Myrtil Logan, an incompetent person, by her legal guardian Bucks County Bank & Trust Company

v.

**HARTFORD FIRE INSURANCE CO.**

v.

**Charles W. HAGER, IV.**

**CHEZ ODETTE, INC.**

v.

**HARTFORD FIRE INSURANCE CO.**

v.

**Charles W. HAGER, IV.**

Civ. A. Nos. 77–4031, 77–4032.

United States District Court,
E. D. Pennsylvania.

April 15, 1981.

---

George F. Dale, Philadelphia, Pa., Herbert F. Kolsby, Philadelphia, Pa., for Charles W. Hager, IV.

Joseph P. Green, Philadelphia, Pa., for defendant.

## ADJUDICATION

DITTER, District Judge.

These two diversity actions for declaratory judgment were brought to determine whether Odette Myrtil Logan (Myrtil) was covered under a homeowner's insurance policy issued to her by defendant, Hartford Fire Insurance Company. The cases were tried jointly and without a jury. For the

reasons which follow, I conclude that coverage existed under Myrtil's homeowner's policy.

The facts of this case are not really in dispute and, for the most part, have been agreed to by stipulation of counsel. Chez Odette, Inc., a restaurant located in New Hope, Pennsylvania, was owned and operated by Myrtil. On Sunday, August 24, 1969, she had a party at a house she rented from Mr. and Mrs. Emlen Etting at Loveladies Harbor, New Jersey.[1] The party, given for employees of Chez Odette, their guests, and other business-related persons and their guests, was informal and its planned activities included ocean bathing, using a swimming pool, game playing, and eating. Myrtil annually held a party for her employees, but this was the first year it was held at this particular location. Although she used the shore as a place for weekend rest and relaxation, Myrtil said that the giving of this party was a part of running her restaurant.

One of those present on the day in question was Charles W. Hager, IV, who was not an employee of Chez Odette. He was the husband of a former employee of the restaurant and the son-in-law of a present employee. Sometime during the afternoon, Hager dove into a canal adjacent to the property and was seriously and permanently injured. He brought suit in Pennsylvania against the Ettings, Myrtil, and Chez Odette, and recovered 1.8 million dollars. On appeal, the Superior Court of Pennsylvania, finding reversible error, ordered a new trial. *Hager v. Etting*, 268 Pa.Super.

416, 408 A.2d 856 (1979). The matter has not as yet been retried.

On the date of the accident, Myrtil had a homeowner's insurance policy and Chez Odette had a general liability policy, both in the amount of $300,000., and both issued by Hartford. Defendant admitted coverage under the corporate policy, but disclaimed under the homeowner's policy. It contended that Hager's claim against Myrtil was excluded from protection under the homeowner's policy by its "business pursuits" clause which provides:

> This policy does not apply to bodily injury or property damage arising out of business pursuits of any Insured except activities therein which are ordinarily incident to non-business pursuits.

Plaintiffs brought these two declaratory judgment actions asking me to conclude that defendant owed coverage to Myrtil under her homeowner's policy.[2] The arguments advanced by plaintiffs are two-fold: (1) the business pursuits exclusion is not applicable to the facts of this case; and (2) defendant is estopped from denying coverage. For the reasons which follow, I hold that the business pursuits exclusion does not preclude coverage and that defendant was obligated to protect Myrtil under her homeowner's policy.[3]

 As the Third Circuit recently stated, "[t]he rules relating to the analysis of insurance policies in Pennsylvania are well established." *Eastern Associated Coal Corp. v. Aetna Casualty & Surety Co.*, 632 F.2d 1068, 1075 (3d Cir. 1980).[4] Where, as

---

1. It is unclear whether Myrtil leased and paid the rent on the property individually or on behalf of the corporation, Chez Odette. However, for purposes of these declaratory judgment actions, the capacity in which this was accomplished would not alter the conclusion I reach today, to wit, that coverage existed under Myrtil's homeowner's insurance policy. I, therefore, decline to make a specific finding on this matter.

2. Defendant moved for leave to join Hager as an indispensible party pursuant to Fed.R.Civ.P. 19, claiming Hager had a distinct interest in the outcome of the lawsuit. I granted the motion and defendant subsequently joined Hager in both actions.

3. In arguing that defendant is estopped from denying coverage under the homeowner's policy, plaintiffs state that defendant waited too long before it informed Myrtil that it planned to disclaim coverage. Because I hold that the business pursuits exclusion simply is not applicable here, it is not necessary for me to reach this issue.

4. By their silence on the matter, I assume that the parties are in agreement that the law of Pennsylvania controls the disposition of these two diversity actions for declaratory judgment. I agree with this assumption and hold that Pennsylvania law applies as it clearly is the jurisdiction that has the greatest contact and most significant interest in the outcome of this lawsuit.

here, an insurer seeks to disclaim coverage under an insurance policy by invoking an exclusionary provision, it bears the burden of proving that the exclusion is applicable to the particular case. *Daburlos v. Commercial Insurance Co.*, 521 F.2d 18, 24 (3d Cir. 1975); *Weissman v. Prashker*, 405 Pa. 226, 175 A.2d 63 (1961). "Moreover, exceptions to the general liability of the insurer are to be *strictly* construed against the insurance company." *Frisch v. State Farm Fire & Casualty Co.*, 218 Pa.Super. 211, 214, 275 A.2d 849, 851 (1975) (emphasis added). Thus, if the denial of coverage under Myrtil's homeowner's policy is to be sustained, the defendant must affirmatively show that the business pursuits exclusion is applicable under the circumstances present here. It has not done so for two principal reasons.

■ As with any other contract, the court, in examining a contract of insurance, must first ascertain the intent of the parties from the language used in the agreement. *Mohn v. American Casualty Co.*, 458 Pa. 576, 326 A.2d 346, 351 (1974). If the plain and ordinary language of the contract permits, the court should read policy provisions so as to avoid ambiguities. *Pennsylvania Manufacturers' Association Insurance Co. v. Aetna Casualty & Surety Co.*, 426 Pa. 453, 457, 233 A.2d 548, 551 (1967). A court "should not torture the language of the policy in order to create ambiguities where none otherwise exist." *Treasure Craft Jewelers v. Jefferson Insurance Company*, 583 F.2d 650, 652 (3d Cir. 1978).

A "provision of an insurance policy is ambiguous if reasonably intelligent men on considering it in the context of the entire policy would honestly differ as to its meaning," *Celley v. Mutual Benefit & Health Association*, 229 Pa.Super. 475, 324 A.2d 430, 434 (1974), or if the terms of the policy are "reasonable susceptible of more than one interpretation." *C. H. Heist Caribe Corp. v. American Home Assurance Co.*, 640 F.2d 479 at 481 (3d Cir. 1981). Where an ambiguity does exist, "[it] is settled that . . . [it] *must* be construed against the insurer, and in a manner which is more favor-

able to coverage." *Buntin v. Continental Insurance Co.*, 583 F.2d 1201, 1207 (3d Cir. 1978) (emphasis in original) (citations omitted). As the court stated in *Frisch, supra*:

Stated more fully, the rule is that, where, by reason of ambiguity in the language employed in a policy or contract of insurance, there is doubt or uncertainty as to its meaning and it is fairly susceptible of two interpretations, one favorable to the insured and the other favorable to the insurer, the former will be adopted, or, as has been stated, the policy will be construed in favor of the insured in order not to defeat, without plain necessity, a claim to indemnify which was the insured's object to obtain.

218 Pa.Super. at 214, 275 A.2d 849 (citations omitted). This rule of strict construction against the insurer is especially true should the ambiguity exist as an exception to general liability. *Celley v. Mutual Benefit & Health Association, supra*, 324 A.2d at 434. With these principles in mind, I conclude that Myrtil's homeowner's policy is ambiguous and, for this reason, coverage must be extended to her by the defendant.

■ The business pursuits exclusion at issue here consists of two clauses: the first states that "[t]his policy does not apply to bodily injury . . . arising out of business pursuits of any Insured." This prong of the exclusion is clearly not ambiguous and I find that Myrtil was engaged in a business pursuit in holding a party for her business associates at her shore home.

The ambiguity arises from the exception to the broad exclusion for business pursuits. This exception provides that even if an insured is engaged in a business pursuit, coverage exists for "activities therein which are ordinarily incident to non-business pursuits." The parties, of course, differ in their understanding of the meaning of this exception. Defendant's interpretation is that "the activity, to be an exception to the exclusionary clause, must be one which is not associated with or related in any way to the insured's business pursuits." Defend-

ant states that whether the "activity" referred to in the exception was Hager's dive into the lagoon, or Myrtil's failure to warn Hager, or Myrtil's failure otherwise to supervise the activities of the guests at the party, the "activity" was associated with Myrtil's business pursuit, her party. Defendant argues, therefore, that since plaintiffs have not shown that Hager had any conceivable connection with Myrtil other than a business-related one, his injuries were not covered under her homeowner's policy. Defendant reasons that were it not for the company party, Hager would never have had any contact whatsoever with Myrtil, and the opportunity for such an accident would never have arisen.

■ I disagree. The exclusion is not intended to deny coverage to all activities which occur during the course of an insured's business pursuits. Coverage is to be afforded, says the exception, to a limited class of such activities, i.e., those which ordinarily would be associated with non-business matters. While Myrtil's party was a part of her business, the running of a restaurant, Hager's act of diving into the lagoon certainly was not. Myrtil was not running a recreational facility for swimmers, but a restaurant. Thus, while Hager's accident was an aspect of Myrtil's party, it arose from an activity which ordinarily would be incident to one of Myrtil's non-business pursuits.

Obviously, the matter is not free of doubt. In fact, this clause has been the subject of considerable litigation, see cases cited in Annot., 48 A.L.R.3d 1096 (1973), and "[n]early all of the courts have found the language difficult of interpretation and application." *Robinson v. Utica Mutual Insurance Co.*, 585 S.W.2d 593, 595 (Tenn. 1979). Many courts have found the language of the exclusion ambiguous. *See Gulf Insurance Co. v. Tilley*, 280 F.Supp. 60, 65 (N.D.Ind.1967), aff'd, 393 F.2d 119 (7th Cir. 1968); *Stanley v. American Fire & Casualty Co.*, 361 So.2d 1030, 1032 (Ala. 1978) ("The provision does not lend itself to clarity, resulting in a split of opinion over whether it is ambiguous with the consensus

that it is poorly worded."). Moreover, courts have found, as I do, that the exception itself is ambiguously worded and "tends to obscure rather than elucidate the meaning of the clause." *State Farm Fire & Casualty Co. v. National Union Fire Insurance Co.*, 87 Ill.App.2d 15, 230 N.E.2d 513, 515 (1967). In the *State Farm* case, the court, concluding that the exception was equivocal and ambiguous, stated: "[W]e believe that further inquiry into the enigma of the meaning of the exception to the exclusionary clause would be fruitless." *Id.* at 516.

The divergent approaches taken by many courts has been noted in two articles that deal with the business pursuits exclusion, and both point out the problems courts face in applying this ambiguous clause. In the first commentary, after analyzing the decisions that have construed the clause, the author concluded that "[t]here has been little uniformity among the various courts as to when the 'business pursuits' exclusion becomes operative," Frazier, *The "Business Pursuits" Exclusion in Personal Liability Insurance Policies: What the Courts Have Done with It*, 1970 Ins.L.J. 519, 521, and, as a result, "the cases have, on somewhat similar facts, reached varying and sometimes questionable results." *Id.* at 533. This same author updated his article seven years later; during the interim period, the clause was increasingly the subject of litigation. Yet, the confusion of the courts persisted: "Unfortunately, the line between what is covered and what is excluded is often difficult to draw with precision in all situations, and frequently the court decisions are in irreconcilable conflict." Frazier, *The Business-Pursuits Exclusion Revisited*, 1977 Ins. L.J. 88, 89.

■ As this discussion shows, intelligent people for years have differed in their interpretation of the business pursuits clause and divergent results have been reached as a consequence. If reasonably intelligent people differ as to the meaning of a policy provision, ambiguity exists. *Celley v. Mutual Benefit & Health Association*, 324 A.2d at 434. Moreover, the defendant could cure

the ambiguity by using more explicit language which would place the meaning of the clause beyond question. *See id.* Since the exclusion is ambiguous, coverage must be provided. Pennsylvania law is in accord.[5]

Although the parties did not address this issue, one further reason exists for finding coverage in the instant case. In *Hionis v. Northern Mutual Insurance Co.*, 230 Pa.Super. 511, 327 A.2d 363, 365 (1974), the court held that since insurance policies are viewed as contracts of adhesion with the purchaser possessing virtually no bargaining power, as part of its affirmative duty of showing that an exclusionary clause is applicable, an insurer must also establish "that the insured was aware of the exclusion or limitation and that the effect thereof was explained to him."[6] The defendant has not done so.

■ First, defendant has not offered any evidence that Myrtil was informed of the exclusionary provision and the effect that it would have on her policy. Second, unlike the case of *Brokers Title Co. v. St. Paul Fire & Marine Co.*, 610 F.2d 1174, 1181 (3d Cir. 1979), in which the Third Circuit concluded that Pennsylvania would not apply the *Hionis* rule in situations where the parties negotiate from relatively equal bargaining positions, we are not dealing here with a sophisticated insured. Myrtil was a retired Broadway actress, who became the proprietor of a restaurant. There has been no showing that she knew anything about insurance or that she obtained it in a manner different than that of a typical purchaser of insurance, who, for the most part, has virtually no bargaining power. Therefore, applying the *Hionis* rule, coverage should have been afforded Myrtil under her homeowner's policy.

Plaintiffs contend that they are entitled to be reimbursed by defendant for their costs, expenses, and attorney's fees because defendant wrongfully and in bad faith denied coverage to Myrtil under her homeowner's policy. The question whether attorney's fees may be awarded to an insured who brings a declaratory judgment action against his insurer to enforce the contractual duty to defend has recently been considered in *Kelmo Enterprises, Inc. v. Commercial Union Insurance Co.*, 426 A.2d 680 No. 2324 Oct. Term, 1978 (Pa.Super.1981), the only Pennsylvania appellate court to deal precisely with this issue. The court in *Kelmo Enterprises* held that

> an insured who is compelled to bring a declaratory judgment action to establish his insurer's duty to defend an action brought by a third party may recover his attorneys' fees incurred in the declaratory judgment action if the insurer has, in *bad faith*, refused to defend the action brought by the third party.

*Id.* at 685 (emphasis added).

■ Without belaboring the point, I find that plaintiffs have not met their burden of proving that defendant acted in bad faith in refusing to defend Myrtil under her homeowner's policy in the action brought against her by Hager. Although I find that the business pursuits provision did not exclude coverage to Myrtil, divergent results have been reached with respect to the exception's applicability. Moreover, I have found no cases with similar facts to provide defendant with precedent for its decision. Hence, defendant did not act unreasonably in refusing to provide Myrtil a defense un-

---

5. This is not my first encounter with this exception to a business pursuits exclusion. As a state court trial judge I had to deal with it in *Styer v. Harleysville Mutual Casualty Co.*, 38 Pa.D. & C.2d 332, 85 Montg.Co.L.Rep. 467 (1965). On that occasion, after quoting colorful language in which Justice Musmanno had described another obscure insurance clause, I concluded that the defendant was required to provide coverage because the business pursuits exception was ambiguous. While I hesitate to cite my own opinion, however old and unre-

versed it may be, as authority for the law of Pennsylvania, I do so in this instance with all appropriate modesty since *Styer* is the only Pennsylvania case which I have been able to find which construes this business pursuits exception.

6. Even if the business pursuits exclusion was written in "clear and concise" language and was not ambiguous, the *Hionis* rule would still apply. *Klischer v. Nation-wide Life Insurance Co.*, 422 A.2d 175, 178 (Pa.Super.1980).

der the homeowner's policy. Furthermore, I find no bad faith. It must be remembered that Hartford defended Myrtil under the corporate policy of Chez Odette of which she was a named insured. Thus, I shall deny plaintiffs' claim for costs, expenses, and attorney's fees in bringing these two declaratory judgment actions.[7]

The above adjudication constitutes my findings of fact and conclusions of law required by Rule 52(a) of the Federal Rules of Civil Procedure. An appropriate order will follow.

---

7. In Civil Action No. 77–4032, Chez Odette asked me to declare the rights and liabilities of the parties under its general corporate liability policy. I do not find this necessary in light of the fact that defendant has offered the full amount of coverage under the corporate policy. Moreover, nothing contained in this adjudication with respect to the homeowner's policy shall be construed as affecting the rights of the parties under the corporate policy.