NORTH CAROLINA FARM BUREAU MUTUAL INSURANCE COMPANY v. LOUISE HOOKS STOX AND GORDON OWENS

No. 124A91

(Filed 27 January 1992)

1. **Insurance § 149 (NCI3d) — homeowners insurance — exclusion for expected or intended bodily injury**

    In order for the exclusion in a homeowners policy for bodily injury which is "expected or intended by the insured" to apply, it is insufficient for the insurer to show only that the act was intentional; rather, the insurer must prove that the injury itself was expected or intended by the insured. Therefore, the exclusion did not apply where the insured intentionally pushed a co-worker on the shoulder, causing her to fall and sustain injuries, and competent evidence supported the trial court's finding that the insured did not intend to cause bodily injury to the co-worker.

    **Am Jur 2d, Insurance §§ 708, 709.**

    **Construction and application of provision of liability insurance policy expressly excluding injuries intended or expected by insured. 31 ALR4th 957.**

2. **Insurance § 149 (NCI3d) — homeowners insurance — assault and battery action — intent to injure not inherent — exclusion inapplicable**

    An allegation of intent to injure was not inherent in the injured party's assault and battery tort complaint against the insured so as to render applicable the "expected or intended" bodily injury exclusion in the insured's homeowners policy.

    **Am Jur 2d, Insurance §§ 708, 709.**

N.C. FARM BUREAU MUT. INS. CO. v. STOX

[330 N.C. 697 (1992)]

Construction and application of provision of liability insurance policy expressly excluding injuries intended or expected by insured. 31 ALR4th 957.

3. **Insurance §§ 45, 149 (NCI3d)— homeowners insurance— accident—injury from intentional act**

Where the term "accident" is not specifically defined in an insurance policy, that term includes injury resulting from an intentional act if the injury is not intentional or substantially certain to be the result of the intentional act. Therefore, the trial court correctly concluded that the insured's liability, if any, for an unintended injury to a co-worker resulting from the insured's intentional act of pushing the co-worker was covered under the insured's homeowners policy as an "occurrence" or "accident."

Am Jur 2d, Insurance §§ 708, 709.

Liability insurance: assault as an "accident," or injuries therefrom as "accidentally" sustained, within coverage clause. 72 ALR3d 1090.

4. **Insurance § 149 (NCI3d)— homeowners insurance—business pursuits exclusion—exception—ambiguity—construction**

The "business pursuits" exclusion in a homeowners policy and the exception to that exclusion for "activities which are usual to non-business pursuits" are ambiguous, and these ambiguities must be construed against the insurance company and in favor of coverage.

Am Jur 2d, Insurance § 727.

Construction and application of "business pursuits" exclusion provision in general liability policy. 48 ALR3d 1096.

5. **Insurance § 149 (NCI3d)— homeowners insurance—business pursuits exclusion—pushing of co-worker—exception for usual nonbusiness activities**

Assuming that the insured was engaged in a "business pursuit" at the time he pushed a co-worker within the meaning of the "business pursuits" exclusion of a homeowners policy, the insured's act of pushing the co-worker came within the exception to the "business pursuits" exclusion for "activities which are usual to non-business pursuits."

**Am Jur 2d, Insurance § 727.**

**Construction and application of "business pursuits" exclusion provision in general liability policy. 48 ALR3d 1096.**

APPEAL by the defendant Stox pursuant to N.C.G.S. § 7A-30(2) from a decision by a divided panel of the Court of Appeals, 101 N.C. App. 671, 401 S.E.2d 82 (1991), reversing the judgment and order entered by *Watts, J.*, on 9 April 1990 in Superior Court, PITT County. The plaintiff's petition for discretionary review of additional issues was allowed by the Supreme Court. Heard in the Supreme Court on 12 November 1991.

*Speight, Watson and Brewer, by James M. Stanley, Jr., for the plaintiff-appellee.*

*Ward and Smith, P.A., by A. Charles Ellis, for the defendant-appellant Stox.*

MITCHELL, Justice.

The plaintiff, North Carolina Farm Bureau Mutual Insurance Company (Farm Bureau), brought this declaratory judgment action seeking a determination as to the proper construction of a homeowners insurance policy. The primary issue to be resolved in this appeal is whether liability for personal injuries suffered by the defendant Louise Hooks Stox, which occurred when she fell as the result of a push by the defendant Gordon Owens, is covered by a policy of homeowners liability insurance issued to Owens by Farm Bureau. We conclude that under the language of the policy in question, coverage is provided. Accordingly, the decision of the Court of Appeals, which held to the contrary, is reversed.

All parties to the present case waived trial by jury. Evidence was introduced before the trial court tending to show, *inter alia*, that on 20 May 1989, the defendant Stox, age seventy, received a severely fractured right arm as a result of a fall which occurred while she was working at a Roscoe-Griffin shoe store in Greenville. While another employee, the defendant Owens, age sixty-eight, was assisting a customer, Stox began speaking with the customer's mother. Owens was sitting on a stool in front of the customer, a few feet away from Stox. Owens got up, stepped toward Stox, placed his hands on her left shoulder and pushed her, while saying

"get away from here." This unexpected push caused Stox to lose her balance and fall, severely fracturing her right arm.

Stox was wearing shoes with heels at the time of the fall. Stox testified that had she been expecting the push to her shoulder, she could have braced herself for it and not fallen. No evidence tended to show that Stox experienced any pain or injury in the area where Owens put his hands on her shoulder. Owens testified at deposition that he did not intend to knock Stox to the floor or cause her any injury. Prior to 20 May 1989, Owens had never pushed or laid a hand upon Stox or any other employee of the store.

On 20 May 1989, Owens was insured under a homeowners insurance policy issued by the plaintiff Farm Bureau which provided him liability coverage. The relevant portions of that policy provide:

COVERAGE E—Personal Liability

If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies, we will:

1. pay up to our limit of liability for the damages for which the insured is legally liable; and

2. provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. . . .

. . . .

DEFINITIONS

. . . .

5. "occurrence" means an accident, including exposure to conditions, which results, during the policy period, in:

a. bodily injury; or

b. property damage.

. . . .

SECTION II—EXCLUSIONS

Coverage E—Personal Liability and Coverage F—Medical Payments to Others do not apply to bodily injury or property damage:

a. which is expected or intended by the insured;

b. arising out of business pursuits of an insured or the rental or holding for rental of any part of any premises by an insured.

This exclusion does not apply to:

(1) activities which are usual to non-business pursuits; . . . .

Business is defined in the policy as "trade, profession, or occupation."

At the conclusion of the evidence, the trial court entered its Judgment and Order in which it made the following findings of fact:

2. On May 20, 1989, Gordon Owens intentionally pushed Louise Stox, causing her to fall and receive injury.

3. The pushing of Louise Stox by Gordon Owens involved foreseeable consequences of significant bodily injury.

4. At the time Gordon Owens pushed Louise Stox, he had no specific intent to cause bodily injury to Louise Stox, and the injuries sustained by Louise Stox were the unintended result of an intentional act by Gordon Owens.

5. Although the pushing incident occurred in an employment setting, the pushing incident did not occur as a result of Gordon Owens engaging in a business pursuit.

6. The "business pursuit" exclusion in Plaintiff's insurance policy and the exception to the exclusion are ambiguous.

Based on its findings, the trial court entered the following conclusions of law:

1. The pushing incident constituted an "occurrence" under the terms of the homeowners insurance policy issued by Plaintiff to Gordon Owens.

2. The "expected or intended injury" exclusion contained in the policy is inapplicable.

3. The "business pursuit" exclusion contained in the policy is inapplicable.

4. In the alternative, if the pushing incident occurred as a result of Gordon Owens engaging in a business pursuit, the act of pushing Ms. Stox constituted an activity which was usual to a non-business pursuit under the exception to the "business pursuit" exclusion.

5. The policy of insurance issued by Plaintiff to Gordon Owens affords liability coverage to Gordon Owens for damages for which he becomes legally responsible because of the pushing incident involving Louise Stox, and which forms the basis of Pitt County Case . . . .

Based on its findings and conclusions, the trial court ordered the plaintiff to pay any amount for which Owens became legally liable to Stox, up to the limit of liability of the homeowners insurance policy. The plaintiff appealed. A divided panel of the Court of Appeals concluded that the policy did not cover Owens' liability for Stox's injuries, because those injuries were excluded from coverage by the exclusion for "expected or intended" injuries. For that reason the Court of Appeals reversed the judgment of the trial court.

We conclude that there was competent evidence to support the trial court's findings of fact which, in turn, supported its conclusions of law that Stox's injuries were covered under the Farm Bureau policy. Therefore, we reverse the decision of the Court of Appeals.

At the outset, it is important to note that the rules of construction which govern the interpretation of insurance policy provisions extending coverage to the insured differ from the rules of construction governing policy provisions which exclude coverage. *State Capital Ins. Co. v. Nationwide Mut. Ins. Co.*, 318 N.C. 534, 538, 350 S.E.2d 66, 68 (1986). Those provisions in an insurance policy which extend coverage to the insured must be construed liberally so as to afford coverage whenever possible by reasonable construction. *Id.* However, the converse is true when interpreting the exclusionary provisions of a policy; exclusionary provisions are not favored and, if ambiguous, will be construed against the insurer and in favor of the insured. *Id.; Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co.*, 276 N.C. 348, 172 S.E.2d 518 (1970).

It must also be remembered that on appellate review of a declaratory judgment, a trial court's findings of fact in a trial without a jury will be upheld if supported by any competent evidence. *Williams v. Pilot Life Ins. Co.*, 288 N.C. 338, 218 S.E.2d 368 (1975). This is true even when evidence to the contrary is present. *Id.* The function of an appellate court in reviewing declaratory judgments in such cases "is, then, to determine whether the record contains competent evidence to support the findings; and whether the find-

ings support the conclusions." *Nationwide Mut. Ins. Co. v. Allison*, 51 N.C. App. 654, 657, 277 S.E.2d 473, 475, *disc. rev. denied*, 303 N.C. 315, 281 S.E.2d 652 (1981). If the trial court's findings are supported by competent evidence and, in turn, support its conclusions, the declaratory judgment must be affirmed on appeal.

[1] We first consider whether the policy's exclusion of "bodily injury . . . which is expected or intended by the insured" places Owens' liability for injury to Stox in the present case outside the coverage of the policy. The trial court found from competent evidence before it that, although Gordon Owens intentionally pushed Louise Stox, he had no specific intent to cause her injury. Thus, the injuries she sustained were "the unintended result of an intentional act." These findings supported the trial court's conclusion that "the 'expected or intended injury' exclusion contained in the policy is inapplicable."

The Court of Appeals, however, reversed the trial court, concluding that the present case was controlled by *Commercial Union Insurance Co. v. Mauldin*, 62 N.C. App. 461, 303 S.E.2d 214 (1983). We disagree with the Court of Appeals and conclude that *Commercial Union* is not controlling. In *Commercial Union*, one of the defendants, Tommy Joe Wilmoth, drove up beside a car occupied by his wife and Kay Mauldin Pugh. After arguing with his wife for a moment, Wilmoth pulled out a .38 caliber pistol and fired four or five shots into Pugh's car. The shots killed Pugh and injured Wilmoth's wife. Wilmoth pled guilty to the second-degree murder of Pugh, and stipulated that he had intended to shoot and injure his wife but not Pugh. The Court of Appeals affirmed the trial court's holding that Wilmoth's actions in shooting Pugh were excluded from coverage under his homeowners policy by the "expected or intended injury" exclusion.

In the present case, the Court of Appeals put misplaced reliance on *Commercial Union* and focused on the intentional nature of the act rather than the resulting injury. The Court of Appeals stated that "[w]hile there might well have been no specific intent to injure [Stox], the focus must be on the intentional *act* not the resulting consequence." *N.C. Farm Bureau Mut. Ins. Co. v. Stox*, 101 N.C. App. 671, 675, 401 S.E.2d 82, 85 (1991). Under the rules of construction which govern this exclusionary provision in the Farm Bureau homeowners policy, we disagree with the Court of Appeals and conclude that it is the resulting injury, not merely

the volitional act, which must be intended for this exclusion to apply.

*Commercial Union* involved a situation in which the insured fired four or five bullets into an occupied car at close range. The insured stipulated that he had the specific intent to shoot and injure his wife, and he pled guilty to the second-degree murder of Pugh. Thus, he obviously knew it was probable that he would injure Pugh when he fired four or five shots into her moving car. *Commercial Union*, 62 N.C. App. at 464, 303 S.E.2d at 217. Stated otherwise, through the insured's actions and admissions, the injury to Pugh was established to have been "intended" within the meaning of that term as used in the insurance policy.

In the present case, we encounter a different situation. Here, the insured intended the act, but competent evidence supported the trial court's finding that he did not intend to cause bodily injury. Owens testified he had no intent to injure Stox when he intentionally pushed her. Stox also testified that she did not believe Owens pushed her with the intent to injure her. The trial court was not required to find an intent to injure from evidence showing a mere push to the left shoulder which left no soreness or sign of injury — evidence entirely unlike the violent firing of bullets into an occupied car at close range.

We have focused on the language of the policy exclusion in dispute and have found no other North Carolina case interpreting this exact language. However, provisions contained in homeowner policies excluding expected or intended injuries have been the subject of extensive case law in other jurisdictions. *See* James L. Rigethaupt, Jr., Annotation, *Construction and Application of Provision of Liability Insurance Policy Expressly Excluding Injuries Intended or Expected By Insured*, 31 A.L.R.4th 957 (1984). Our interpretation of the provision in the policy before us is consistent with the majority rule that has emerged from the case law on this issue in other jurisdictions.

In *Kling v. Collins*, 407 So. 2d 478 (La. App. 1981), the Louisiana Court of Appeal, First Circuit, interpreted a similar exclusionary provision. In that case, Collins and Ms. Kling harbored ill feelings for each other. *Id.* at 480. While visiting Collins' home, Kling began shouting and making gestures towards Collins. *Id.* Collins then shoved Kling in an effort to make her leave his house. *Id.* As a result of the shove, Kling fell to the floor and sustained

a wrist injury. *Id.* The Court affirmed the decision of the trial court that the exclusion was inapplicable because, though Collins intended to push Kling, the bodily injury was neither intended nor expected by the insured. *Id.* The Court explained that "[t]he exclusionary clause sought to be enforced herein does not preclude liability for an expected or intended 'act' but rather for an expected or intended 'injury'." *Id.* at 481.

More recently, in *Physicians Insurance Co. v. Swanson*, 58 Ohio St. 3d 189, 569 N.E.2d 906 (1991), the insured, a teenage boy, shot a BB gun at a group of teenagers approximately seventy to one hundred feet away. *Id.* at 189, 569 N.E.2d at 907. According to the testimony of the insured, he was aiming at a sign ten to fifteen feet above the group to scare them. *Id.* Unfortunately, one of the BBs struck one of the teenagers in the right eye causing him to lose that eye. *Id.* at 190, 569 N.E.2d at 907. The Supreme Court of Ohio held that the exclusion for bodily injury which is "expected or intended" by the insured was inapplicable. *Id.* at 193, 569 N.E.2d at 911. The Court reasoned:

> [I]n order for an exclusion of this nature to apply, an insurer must demonstrate not only that the insured intended the act, but also that he intended to cause harm or injury. The rationale for this rule of law is twofold. First, the plain language of the policy is in terms of an intentional or expected injury, not an intentional or expected act. Were we to allow the argument that only an intentional act is required, we would in effect be rewriting the policy. Second, . . . many injuries result from intentional acts, although the injuries themselves are wholly unintentional.

*Id.* at 193, 569 N.E.2d at 910-11.

Further support for our conclusion in the present case is found in *Caspersen v. Webber*, 298 Minn. 93, 213 N.W.2d 327 (1973). There, the Supreme Court of Minnesota interpreted a similar exclusionary provision which excluded "bodily injury . . . caused intentionally or at the direction of the insured." The insured went to the cloak checkroom in a restaurant but was unable to find his claim check. *Id.* at 95, 213 N.W.2d at 328. He asked the plaintiff, a hatcheck attendant, for permission to enter the checkroom. *Id.* The plaintiff objected but the insured proceeded to enter anyway. *Id.* The plaintiff attempted to block the insured's passage into the checkroom, and the insured proceeded to push her aside. *Id.* This

caused the plaintiff to lose her balance and fall, striking her back against a metal message rack on the wall. *Id.* The Court concluded that the exclusion did not apply where the act itself was intended but the resulting injury was not. *Id.* at 98, 213 N.W.2d at 330.

Similarly, in the case at bar, the trial court found that while the insured intentionally pushed Louise Stox, the injuries sustained were the unintended result of the intentional act. We find competent evidence to support these findings in the record. The character of the insured's act did not rise to the level which would require that an intention to inflict an injury be inferred. Therefore we conclude that in order to avoid coverage on the basis of the exclusion for expected or intended injuries in the insurance policy at issue in this case, the insurer must prove that the injury itself was expected or intended by the insured. Merely showing the act was intentional will not suffice.

[2]  The plaintiff Farm Bureau argues that Stox will be limited in her tort action against Owens to the theory of recovery she alleged in her complaint, assault and battery. Therefore, the plaintiff reasons, Owens will be found liable in that action, if at all, only for intended injuries. The plaintiff primarily relies here on *Aetna Casualty & Surety Co. v. Freyer*, 89 Ill. App. 3d 617, 411 N.E.2d 1157 (1980), where a tort action for assault and battery was filed against the defendant insured for beating a woman with his fists causing bruises, a black eye, and other injury. In *Freyer*, the injured woman alleged that the acts were "wanton, willful and malicious on the part of the defendant." *Id.* at 619, 411 N.E.2d at 1158. The Appellate Court of Illinois, First District, Fourth Division found that "malice" was specifically alleged in the action and was defined under Illinois law as an intent to do harmful injury. *Id.* at 622, 411 N.E.2d at 1161. The Court stated, "Thus it is clear that in alleging that malice was the gist of both causes of action, the tort plaintiff was alleging that the insured intended to injure the tort plaintiff." *Id.*

Stox merely alleged in her tort action that Owens "willfully committed an assault." No allegation of malice was put forth by Stox, and she testified in this declaratory judgment action that she did not believe Owens had any intent to injure her when he pushed her. Still, the plaintiff Farm Bureau urges that under North Carolina law, an intent to injure is inherent in every tort action involving an assault or battery. We disagree. This Court has stated,

"the interest protected by the action for battery is freedom from *intentional and unpermitted contact* with one's person; the interest protected by the action for assault is freedom from apprehension of a harmful *or offensive contact* with one's person." *Dickens v. Puryear*, 302 N.C. 437, 445, 276 S.E.2d 325, 330 (1981) (emphasis added); *see also* Prosser, Law of Torts §§ 9, 10 (5th ed. 1984) (hereinafter "Prosser"). Further, Dean Prosser has stated that "[t]he intent with which tort liability is concerned is not necessarily a hostile intent, or a desire to do any harm. Rather it is an intent to bring about a result which will invade the interests of another in a way that the law forbids." Prosser, § 8, p. 34. We conclude that an allegation of an intent to injure was not inherent in Stox's assault and battery tort complaint.

[3] We have allowed the plaintiff Farm Bureau's petition to bring forward additional issues for our review. Under its first issue, Farm Bureau contends that Owens' act was not a covered "occurrence" or "accident" under the terms of its homeowners policy in question. The policy provides coverage for "bodily injury . . . caused by an occurrence." "Occurrence" is defined as "an accident, including exposure to conditions, which results, during the policy period, in . . . bodily injury." The term "accident" is not defined anywhere in the policy. The trial court found that at the time Gordon Owens pushed Louise Stox, he had no specific intent to cause bodily injury to Louise Stox, and the injuries sustained by Louise Stox were the unintended result of an intentional act by Gordon Owens. The trial court then concluded from those findings that "the pushing incident constituted an 'occurrence' under the terms of the homeowners insurance policy issued by Plaintiff to Gordon Owens."

Again, we are guided by established rules of construction for interpreting provisions of insurance policies. Provisions, such as the one in question, "which extend coverage must be construed liberally so as to provide coverage, whenever possible by reasonable construction." *State Capital Ins. Co. v. Nationwide Mut. Ins. Co.*, 318 N.C. at 538, 350 S.E.2d at 68. It is also well settled that when an insurance policy contains no ambiguity, it shall be construed according to its terms, but when ambiguity exists the policy shall be construed in favor of coverage and against the insurer who selected its language. *Jamestown Mut. Ins. Co. v. Nationwide Mut. Ins. Co.*, 266 N.C. 430, 430, 146 S.E.2d 410, 410 (1966).

In *Iowa Mutual Insurance Co. v. Fred M. Simmons, Inc.*, 258 N.C. 69, 128 S.E.2d 19 (1962), this Court was required to interpret the term "accident" where it was not defined in a liability insurance policy. We focused on various accepted definitions of the term "accident" and cited with approval Webster's definition of "'an event that takes place without one's foresight or expectation; and [sic] undesigned, sudden, and unexpected event; chance; contingency.'" *Id.* at 74, 128 S.E.2d at 22 (quoting *Lacey v. Washburn & Williams Co.*, 309 Pa. 574, 577, 164 A. 724, 725 (1932)). We also noted in *Simmons*, that an element of carelessness or negligence probably enters into most accidents. *Id.* at 75, 128 S.E.2d at 23 (quoting *Aetna Life Ins. Co. v. Little*, 146 Ark. 70, 225 S.W. 298 (1920)).

In the present case, the plaintiff argues that the defendant Stox's injuries resulted from the intentional acts of the defendant Owens and therefore could not be covered as an "occurrence" or "accident" under the terms of the homeowners policy. We disagree. In choosing not to define the term "accident" in its policy, the plaintiff Farm Bureau left its interpretation open and subject to ambiguities. As our rules of construction dictate, all ambiguities must be resolved in favor of the insured. We have found no North Carolina case on point; however, other jurisdictions have found an unintended injury resulting from an intentional act to be a covered "occurrence" or "accident" under homeowners insurance policies.

In *Hartford Fire Insurance Co. v. Blakeney*, 340 So. 2d 754 (Ala. 1976), the Supreme Court of Alabama held that an insured's intentional pushing of a guest out of a doorway in his house, which resulted in serious brain damage when the guest hit his head on the ground, was a covered "occurrence" or "accident" under the policy. *Id.* at 754. The Court upheld the jury's finding that there was coverage under the policy. *Id.* In the process, the Court upheld the trial court's jury charge which stated: "It is an accidental injury where an unexpected result arises from an intended act." *Id.* at 755.

In *Quincy Mutual Fire Insurance Co. v. Abernathy*, 393 Mass. 81, 469 N.E.2d 797 (1984), the insured, a sixteen-year-old boy, admitted to intentionally throwing a large piece of blacktop at a passing car. *Id.* at 82, 469 N.E.2d at 798. The rock shattered the window on the driver's side of the car, causing the driver to sustain facial cuts. It then traveled to the rear seat where

it struck a passenger in the forehead, fracturing her skull. *Id.* The Supreme Judicial Court of Massachusetts reversed the trial court's granting of summary judgment for the insurer. *Id.* at 88, 469 N.E.2d at 802. The Court held that "the resulting injury which ensues from the volitional act of an insured is still an 'accident' within the meaning of an insurance policy if the insured does not specifically intend to cause the resulting harm or is not substantially certain that such harm will occur." *Id.* at 84, 469 N.E.2d at 799.

We conclude that where the term "accident" is not specifically defined in an insurance policy, that term *does* include injury resulting from an intentional act, if the injury is not intentional or substantially certain to be the result of the intentional act. Competent evidence supported the trial court's finding in the case *sub judice* that the injury to Stox was an unintended injury resulting from Owens' intentional act. Therefore, the trial court correctly concluded from that finding that Owens' liability, if any, for that injury was covered under the policy as an "occurrence" or "accident."

Finally, the plaintiff Farm Bureau contends that the defendant Stox's injury arose out of a "business pursuit" of the defendant Owens and, for that reason, is excluded from coverage under the policy. The provision the plaintiff relies upon here excludes coverage for bodily injury "arising out of the business pursuits of an insured." The policy defines "business" as "trade, profession or occupation." The policy also contains an exception to the "business pursuits" exclusion, however, which causes the exclusion not to apply to "activities which are usual to non-business pursuits." The trial court determined that "[t]he 'business pursuit' exclusion in Plaintiff's insurance policy and the exception to the exclusion are ambiguous." The trial court concluded:

> The "business pursuit" exclusion contained in the policy is inapplicable. 4. In the alternative, if the pushing incident occurred as a result of Gordon Owens engaging in a business pursuit, the act of pushing Ms. Stox constituted an activity which was usual to a non-business pursuit under the exception to the "business pursuit" exclusion.

[4, 5] We agree with the trial court that the "business pursuits" exclusion and the exception to that exclusion are ambiguous. Applying established rules of construction, these ambiguities must be construed against the insurance company and in favor of coverage. Further, even assuming *arguendo* that the defendant Owens was

engaged in a "business pursuit" at the time he pushed Stox, a reasonable construction of the exception to that exclusion renders Owens' act of pushing Stox "an activity which is usual to non-business pursuits" and affords coverage.

Though no North Carolina decision has interpreted the exact exclusion and exception involved here, decisions from other jurisdictions have found such provisions ambiguous. In *Myrtil v. Hartford Fire Insurance Co.*, 510 F. Supp. 1198 (E.D. Pa. 1981), an insured restaurant owner held a party for employees and business-related guests of the restaurant. *Id.* at 1200. The son-in-law of an employee dove into a canal adjacent to the property and was seriously and permanently injured. *Id.* The United States District Court for the Eastern District of Pennsylvania concluded that while the injury was associated with the insured's business pursuit, her party, it arose from an activity which ordinarily would be incident to non-business pursuits and was covered under her insurance policy. *Id.* at 1202. The Court noted that the provisions had been the subject of extensive litigation, with many courts finding the language of the exclusion ambiguous. *Id.; see Stanley v. American Fire and Casualty Co.*, 361 So. 2d 1030 (Ala. 1978); *Gulf Ins. Co. v. Tilley*, 280 F. Supp. 60 (N.D. Ind. 1967). The Court stated that "intelligent people for years have differed in their interpretation of the business pursuits clause and divergent results have been reached as a consequence. If reasonably intelligent people differ as to the meaning of a policy provision, ambiguity exists." *Id.*

Also, in *Foster v. Allstate Insurance Co.*, 637 S.W.2d 655 (Ky. Ct. App. 1981), the Court of Appeals of Kentucky interpreted a similar business pursuits exclusion as it related to an accident in the insured's home while she was babysitting. The Court found the business pursuits exclusion and the exception ambiguous, stating:

> [T]he exception provision contained in the exclusion leaves some doubt as to its meaning, and it is clearly susceptible to two reasonable interpretations, one of which would be favorable to the insured and one which would not. In such a case, the law in this Commonwealth is that the interpretation favorable to the insured will be adopted.

*Id.* at 657.

The pushing of Stox by Owens in the present case may reasonably be viewed as usual to "non-business" pursuits within

the meaning of the insurance policy in question. Under well established rules of construction governing insurance policies, this interpretation which affords coverage must be adopted, as all exclusionary provisions are strictly construed against the insurer.

The trial court's findings were supported by competent evidence and, in turn, supported its conclusions and its Judgment and Order. Therefore, the decision of the Court of Appeals is reversed, and this case is remanded to that court for further remand to the Superior Court, Pitt County, for reinstatement of the trial court's Judgment and Order affording coverage under the policy.

Reversed and remanded.