KING, Circuit Judge, dissenting:
I respectfully dissent from the opinion of the panel majority, because I believe that it has incorrectly determined the amount of insurance coverage available from Mit-sui Sumitomo. Each instance of a waste-laden medical instrument being used to operate on an unsuspecting patient at the Duke Hospitals gave rise to an “occurrence.” Duke’s argument to that effect is not simply “intriguing,” ante at 11, it is plainly correct.
An occurrence is defined in the Mitsui Sumitomo policy as an accident (“ ‘Occurrence’ means an accident”). North Carolina precedent counsels that to the extent possible, “every word and every provision [of an insurance policy] is to be given effect,” and this principle instructs us to analyze the word “accident” within the context of the policy’s definition of an occurrence. Gaston Cnty. Dyeing Mach. Co. v. Northfield, Ins. Co., 351 N.C. 293, 524 S.E.2d 558, 563 (2000) (internal quotation marks omitted). Mitsui Sumitomo agreed by its policy to provide coverage to Automatic Elevator for “bodily injury or property damage” up to $1,000,000 for “any one occurrence” (which means “an accident”), and an aggregate limit of $3,000,000 per elevator. Giving effect to the policy’s definition of an “occurrence,” the term “accident” means an “unplanned and unforeseen happening or event.” Gaston Cnty., 524 S.E.2d at 564. North Carolina precedent also dictates that “[w]hether events are ‘accidental’ and constitute an ‘occurrence’ depends upon whether they were expected or intended from the point of view of the insured.” Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co., 315 N.C. 688, 340 S.E.2d 374, 380 (1986). An “occurrence” is therefore not a volitional act, such as leaving barrels in the Duke Health parking lot. An occurrence, or accident, must instead be an unplanned or unforeseen happening or event from the perspective of Automatic Elevator. The district court thus erred in concluding that the volitional decision of leaving the barrels of used hydraulic fluid in the parking lot gave rise to Automatic Elevator’s liability.
*242 In addition to the requirement that an accident be an unplanned happening or event, the presence of injuries or damages is a prerequisite to coverage. This proposition makes sense, inasmuch as there is nothing for the insurer to compensate until injuries or damages have arisen. For example, if an elevator repairman intentionally leaves his tools in a public walkway for easy access and no one uses the walkway, there can be no accident because an unforeseen event will not have occurred. Moreover, there is yet no need for coverage because no damages or injuries have been suffered. If a person uses the obstructed walkway, however, and injures himself falling over the tools, an accident has occurred and the resultant damages are compensable under the policy.
In the foregoing example, the “occurrence” was the fall and the resulting injuries. The repairman’s placing of the tools was an act of volition, but the resulting injuries were unintended by the repairman and his employer and, thus, accidental. The facts of this case present a materially similar scenario. Automatic Elevator, after servicing the Duke Health parking garage, intentionally left the barrels of used hydraulic fluid in the parking lot. Those actions do not satisfy the definition of an accident and thus, at that point, there had been no occurrence. When scores of surgeries were conducted using instruments that had been “cleaned” with the contents of those barrels, however, there were multiple occurrences, as each of the surgeries caused severe injury and damage. Insurance coverage for such injuries is what the policy is all about.
The Supreme Court of North Carolina’s decision in North Carolina Farm Bureau Mutual Insurance Co. v. Stox, 330 N.C. 697, 412 S.E.2d 318 (1992), exemplifies the foregoing. In that case, Stox suffered injuries from a fall after she was pushed by Gordon Owens. The insurer had issued a homeowners liability policy to Owens, under which Owens sought indemnification for Stox’s injuries. The state court of appeals ruled that the policy did not cover Stox’s injuries because those injuries were subject to an exclusion as “expected or intended.” Id. at 321. The state supreme court reversed, ruling that the court of appeals had improperly focused on the intentional nature of Owen’s act in pushing Stox, rather than on the resulting injury. Id. at 322. The supreme court decided that, because Stox’s injuries were unintentional, the occurrence was not subject to the policy exclusion. Id.
The Stox court also assessed whether Owen’s act was a covered “occurrence,” which — as in this case — was defined in the policy as “an accident.” Id. at 324. Since an “accident” was not defined in the policy, the court gave the term the dictionary definition similarly applicable here — “ ‘an event that takes place without one’s foresight or expectation; [an] undesigned, sudden, and unexpected event; chance; contingency.’ ” Id. at 325 (quoting Iowa Mut. Ins. Co. v. Fred M. Simmons, Inc., 258 N.C. 69, 128 S.E.2d 19, 22 (1962)). Guided by the settled rule that insurance policy provisions “which extend coverage must be construed liberally so as to provide coverage, whenever possible by reasonable construction,” the state supreme court concluded that the injury resulting from Owen’s intentional act of pushing Stox was itself an unintended injury covered by the homeowners policy. Stox, 412 S.E.2d at 324-25. As the court explained:
where the term “accident” is not specifically defined in an insurance policy, that term does include injury resulting from an intentional act.... Competent evidence supported the trial court’s finding in the case sub judice that the injury to Stox was an unintended injury resulting from Owens’ intentional act. Therefore, *243 the trial court correctly concluded from that finding that Owens’ liability, if any, for that injury was covered under the policy as an “occurrence” or “aeeident[.”]
Id. at 325. Put simply, the accident (i.e., the occurrence) in that case, according to the high court of North Carolina, was the unintended injury to Stox, rather than the intentional conduct of Owen.
Pursuant to the foregoing, I am convinced that North Carolina law defines an “accident” as an unplanned or unforeseen happening or event that carries unfortunate consequences. Furthermore, the ordinary meaning of the term “accident” is an event that was not anticipated. As a result, an intentional or volitional act of the insured simply cannot be an “accident.” Accidents, however, may be unexpected harmful events (i.e., multiple surgeries with contaminated instruments) that flow from volitional acts such as leaving mislabeled barrels in the Duke Health parking lot. This interpretation of the word “accident” is entirely reasonable, and would prevail under North Carolina law even if “accident,” as used in the policy, could somehow be deemed ambiguous.
From the perspective of Automatic Elevator, its abandonment of barrels of hydraulic fluid could not have been an accident, let alone an accident covered by the policy, in that the abandonment was volitional, that is, actually intended, and the abandonment did not itself result in any injuries or damages. The accidents (i.e., the occurrences) took place when the damages arose — when, unintended by Automatic Elevator, surgeries were performed on unsuspecting Duke hospital patients with contaminated medical instruments that had been unknowingly “cleaned” with used elevator hydraulic fluid. Such occurrences were repeated on at least 127 occasions, and Mitsui Sumitomo, as the insurer, is responsible for those occurrences, up to the aggregate limits of its coverage.*
Because there were two elevators being repaired at the Duke Hospital, and because the hydraulic fluid came from repair work that was performed on both of them, I would rule that Mitsui Sumitomo is liable to its insured for coverage up to $6,000,000.
I respectfully dissent.

 The majority primarily rests its decision on North Carolina’s adoption of a “cause test” to determine which event constituted the occurrence. I am not convinced, however, that North Carolina has ever adopted such a test. The only North Carolina decision that the majority relies on for this test is Gaston County, yet the opinion states that "Duke’s reliance on Gaston County is inappropriate.” Ante at 14. In Gaston County, the court gave weight to the term "accident,” and the accident there was the "sudden, unexpected leakage" of a pressure vessel, causing property damage. "Sudden, unexpected leakage” readily fits the definition of an accident because it was unplanned and unintentional. In my view, Ga-ston County did not adopt a "cause test,” it simply applied the definition of "accident” to the facts of the case to determine which incident qualified as an occurrence.