IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-291

No. COA21-540

Filed 3 May 2022

Wake County, No. 21 CVS 1737

NORTH CAROLINA FARM BUREAU INSURANCE COMPANY, INC., Plaintiff,

v.

BLAINE DALE HAGUE and KARLA DUNCAN CASS, Administrator of the Estate of Baron Thomas Cass, Defendants.

Appeal by Defendant from order entered 21 May 2021 by Judge G. Bryan Collins, Jr., in Wake County Superior Court. Heard in the Court of Appeals 8 March 2022.

*Lipscomb Law Firm, by William F. Lipscomb, for Plaintiff-Appellee.*

*Clodfelter Law, PLLC, by Christina Clodfelter, for Defendant-Appellant.*

GRIFFIN, Judge.

¶ 1        Defendant Blaine Dale Hague appeals from an order granting Plaintiff North Carolina Farm Bureau Mutual Insurance Company, Inc.'s motion for judgment on the pleadings. Defendant argues that (1) the facts surrounding the insurance claim should not have been considered by the trial court, as they fell outside of the scope of the Declaratory Judgment Act; (2) Defendant must have acted with an intent to injure/kill, and not just with the intent to discharge a firearm, to be excluded from

coverage; and (3) a finder of fact must determine whether the allegations of the underlying lawsuit fall within the exclusionary provision of the insurance policy. We hold that the trial court did not err in its consideration of the alleged facts surrounding the shooting, and that Plaintiff has neither a duty to defend nor indemnify Defendant. We affirm.

## I. Factual and Procedural Background

¶ 2        On 7 September 2020, Defendant had a physical altercation with Baron Thomas Cass. Cass removed himself from the conflict by walking away. Defendant then produced a handgun and fired multiple shots, some of which struck Cass and killed him.

¶ 3        On 9 October 2020, Cass's Estate brought a wrongful death suit against Defendant in Iredell County Superior Court, alleging that Defendant breached his duty of care and that Cass died because of Defendant's "grossly negligent acts[.]"

¶ 4        On the date of the shooting, Defendant was insured by Plaintiff to provide personal liability coverage in the amount of $1,000,000 per occurrence. The Insuring Agreement of the Policy reads:

> Coverage L – Liability – We pay, up to our limit, all sums for which an **insured** is liable by law because of **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies. We will defend a suit seeking damages if the suit . . . [is] not excluded under this coverage.

The Policy defines an "occurrence" as "an accident[,] [which] includes loss from repeated exposure to similar conditions." The Policy also includes an Intentional Act Exclusion, which reads: "Farm Personal Liability Coverage does not apply to **bodily injury** or **property damage** which results directly or indirectly from . . . [a]n intentional act or injury resulting from an intentional act of an **insured** or an act done at the direction of an **insured**."

¶ 5        On 5 February 2021, Plaintiff filed a complaint for a declaratory judgment in Wake County Superior Court, asserting that the Policy does not provide liability coverage for the Estate's claim and that Farm Bureau has no duty to defend or indemnify Defendant, because: (1) Defendant's actions do not fall within the Policy's personal liability coverage because the shooting did not constitute an "occurrence"; and (2) the Intentional Act Exclusion excludes coverage for Defendant's intentional acts that resulted in Cass's death.

¶ 6        On 12 March 2021, Plaintiff filed a motion for a judgment on the pleadings. On 20 May 2021, the trial court heard the parties' oral arguments pursuant to the motion. The trial court granted Plaintiff's motion for judgment on the pleadings. The trial court concluded that the complaint could be interpreted as falling within the scope of the Policy's Insuring Agreement, but also that because the complaint alleges Cass's death was caused by an intentional act, Defendant's actions are included within the scope of the Intentional Act Exclusion. Therefore, the court held "as a

matter of law . . . Plaintiff does not have a duty under the Policy to defend [Defendant] in the underlying lawsuit." Because "the duty to defend is broader than the duty to indemnify[,]" the trial court found that "Plaintiff also does not have a duty to indemnify [Defendant.]" Defendant provided timely notice of appeal.

## II.    Analysis

¶ 7        Defendant argues that (1) the facts surrounding the shooting should not have been considered by the trial court, as they fell outside of the scope of the Declaratory Judgment Act; (2) Defendant must have acted with an intent to injure/kill, and not just with the intent to discharge a firearm, to be excluded from coverage; and (3) a finder of fact must determine whether the allegations of the underlying lawsuit fall within the exclusionary provision of the Policy.

## A.    Declaratory Judgment Act

¶ 8        Defendant argues that because the purpose of the Declaratory Judgment Act is to determine law and not facts, the trial court erred in considering the facts surrounding the shooting. Specifically, Defendant contends that, while the Declaratory Judgment Act does apply to the interpretation of written instruments, the authenticity, wording, and rights of the Policy are not in dispute, and the trial court should not have examined the pleadings and applied the facts to the Policy. We disagree.

¶ 9        "When the language of the insurance polic[y] and the contents of the complaint are undisputed, [appellate courts] review de novo the question whether an insurer has an obligation to defend its insured against those allegations." *Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, L.L.C.*, 364 N.C. 1, 6, 692 S.E.2d 605, 610 (2010) (citation omitted). "To answer this question, we apply the 'comparison test,' reading the policies and the complaint side-by-side . . . to determine whether the events as alleged are covered or excluded." *Id.*

¶ 10        North Carolina statute provides that "[c]ourts of record within their respective jurisdictions shall have power to declare rights, status and other legal relations, whether or not further relief is or could be claimed." N.C. Gen. Stat. § 1-253 (2021). The purpose of the Declaratory Judgment Act has been construed by our Supreme Court "to provide a speedy and simple method of determining the rights, status and other legal relations under written instruments . . . and to afford relief from uncertainty and insecurity created by doubt as to rights, status or legal relations thereunder." *Prudential Ins. Co. of America v. Powell*, 217 N.C. 495, 500, 8 S.E.2d 619, 622 (1940) (citation omitted). In *Harleysville Mut. Ins.*, under a declaratory judgment sought by an insurer against the insured, the Court "measured . . . *the facts as alleged in the pleadings*" to ascertain the insurer's duty to defend. *Harleysville Mut. Ins.*, 364 N.C. at 6, 692 S.E.2d at 610 (emphasis added) (internal quotations omitted) (citing *Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co.*, 315 N.C. 688, 691,

340 S.E.2d 374, 377 (1986)). "[W]hen the pleadings allege facts indicating that the event in question is not covered, and the insurer has no knowledge that the facts are otherwise, then it is not bound to defend." *Waste Mgmt. of Carolinas, Inc.*, 315 N.C. at 691, 340 S.E.2d at 377.

¶ 11        Here, Defendant is correct in asserting that a declaratory judgment action to determine a duty to defend under an insurance policy requires interpretation of the written instrument. However, our Supreme Court has construed the Declaratory Judgment Act such that a court measures "*the facts as alleged in the pleadings*" to ascertain an insurer's duty to defend. *Harleysville Mut. Ins.*, 364 N.C. at 6, 692 S.E.2d at 610 (emphasis added). Accordingly, it was within the purview of the trial court under the Declaratory Judgment Act to measure the facts as alleged in the pleadings; specifically, what transpired during the shooting.

## B.    Intentional Act Exclusion

### 1. *Intentional Act*

¶ 12        Defendant argues that he "[m]ust have acted with intent to injure/kill" for his actions to fall under the Policy's Intentional Act Exclusion. Plaintiff asserts the alleged facts demonstrate that Cass's death resulted from Defendant's intentional acts. Specifically, Defendant contends that "the insurer must prove that . . . the insured intended the act and . . . the insured intended the injury[,]" and that

Defendant's action of firing a pistol does not rise to the level necessary to infer an intent to injure. We disagree.

¶ 13     Our Supreme Court has held that:

> [P]rovisions in an insurance policy which extend coverage to the insured must be construed liberally so as to afford coverage whenever possible by reasonable construction. However, the converse is true when interpreting the exclusionary provisions of a policy; exclusionary provisions are not favored and, if ambiguous, will be construed against the insurer and in favor of the insured.

*N.C. Farm Bureau Mut. Ins. Co. v. Stox*, 330 N.C. 697, 702, 412 S.E.2d 318, 321–22 (1992) (citations omitted). In *Stox*, the Court assessed whether an insured's action of intentionally pushing someone, which inflicted injury, fell under the policy's exclusionary provision. *Id.* at 703, 412 S.E.2d at 322. The Court held that "where the term 'accident' is not specifically defined in an insurance policy, that term *does* include injury resulting from an intentional act, if the injury is not intentional or substantially certain to be the result of an intentional act." *Id.* at 709, 412 S.E.2d at 325.

¶ 14     Defendant asserts that, unlike "very different" actions such as sexual molestation and deceptive trade practices, his discharging of a firearm was not substantially certain to inflict injury. However, in *Commercial Union Ins. Co. v. Maudlin*, the insured fired multiple shots at a car in which his wife and her friend were riding, killing the friend. *Commercial Union Ins. Co. v. Maudlin*, 62 N.C. App.

461, 461, 303 S.E.2d 214, 215 (1983). The insurance policy in that case had an exclusion clause similar to the one in the present case. This Court found that the insured's actions were intentional and therefore fell within the exclusion clause, because the insured should have "expected" the likelihood of his actions resulting in injury or death. *Id.* at 464, 303 S.E.2d at 217. "To *expect* is to anticipate that something is probable or certain[.]" *Id.* (emphasis added). Applying the *Stox* standard, this Court has held that, for actions substantially certain to cause injury, "intent to injure may be inferred as a matter of law from the intent to act for the purpose of determining coverage under an insurance policy." *Russ v. Great American Ins. Cos.,* 121 N.C. App. 185, 189, 464 S.E.2d 723, 725 (1995); *see Henderson v. U.S. Fidelity & Guitar Co.*, 124 N.C. App. 103, 111, 476 S.E.2d 459, 464 (1996). Therefore, from the intentional action of firing a pistol multiple times in the direction of another person, where injury is expected (i.e., probable or certain), an intent to injure may be inferred as a matter of law.

¶ 15        Here, Defendant produced a handgun and fired multiple shots in the direction of Cass, some of which struck and killed him. The Policy does not contain a specific definition of "accident" so, for Defendant's actions to be construed as an accident, the resulting injury must not have been intentional or substantially certain to occur. As in *Maudlin*, the action of firing a pistol in the direction of another is conduct from which the actor should expect the probability or certainty of a resulting injury. As

intent to injure may be inferred as a matter of law from an act that is substantially certain to result in injury–such as in cases of sexual molestation, deceptive trade practices, and firing a gun in another's direction–Defendant's action of firing a pistol multiple times in the direction of Cass was not an "accident." Therefore, we hold that Defendant's conduct was an intentional act. *Stox*, 330 N.C. at 708, 412 S.E.2d at 325.

### 2. *Duties to Defend and Indemnify*

¶ 16    To ascertain an insurer's duty to defend, we employ the "comparison test" and read the policy and the complaint side by side and, in a declaratory judgment action, "measure[] . . . the facts as alleged in the pleadings." *Harleysville Mut. Ins. Co.*, 364 N.C. at 6, 692 S.E.2d at 610 (citation omitted). "[W]hen the pleadings allege facts indicating that the event in question is not covered, and the insurer has no knowledge that the facts are otherwise, then it is not bound to defend." *Waste Mgmt. of Carolinas, Inc.*, 315 N.C. at 691, 340 S.E.2d at 377.

¶ 17    Here, the facts alleged in the pleadings indicate that Defendant's conduct–discharging a handgun multiple times in the direction of Cass–constitutes an intentional act. The Policy's Intentional Act Exclusion reads that coverage will not extend to "bodily injury or property damage which results directly or indirectly from . . . [a]n intentional act or injury resulting from an intentional act of an insured or an act done at the direction of an insured." As Defendant's act was intentional, reading the complaint side by side with the Policy's language, Defendant's conduct falls

within the Intentional Act Exclusion. Therefore, we conclude as a matter of law that Plaintiff has no duty to defend Defendant.

¶ 18    An insurer's duty to indemnify is narrower than its duty to defend. *See Harleysville Mut. Ins. Co.*, 364 N.C. at 6, 692 S.E.2d at 610; *Waste Mgmt. of Carolinas, Inc.*, 315 N.C. at 691, 340 S.E.2d at 377 ("[T]he insurer's duty to defend the insured is broader than its obligation to pay damages incurred by events covered by a particular policy. An insurer's duty to defend is ordinarily measured by the facts as alleged in the pleadings; its duty to pay is measured by facts ultimately determined at trial."). As such, it follows that if an insurer has no duty to defend, it has no duty to indemnify. Therefore, we conclude that Plaintiff has no duty to indemnify Defendant.

## C.    Factual Determination

¶ 19    Defendant argues that a finder of fact must determine whether the allegations of the underlying lawsuit are included within the scope of the Policy's Intentional Act Exclusion. Specifically, Defendant contends that because the complaint alleges different theories of recovery, including grossly negligent acts by Defendant, it cannot be ascertained whether Defendant acted with intent to injure Cass, and a finder of fact must resolve that uncertainty. We disagree.

¶ 20    Under a declaratory judgment action, "[i]n addressing the duty to defend, the question is *not* whether *some interpretation of the facts as alleged* could possibly bring

the injury within the coverage provided by the insurance policy; the question is, *assuming the facts alleged as true*, whether the insurance policy covers that injury." *Harleysville Mut. Ins. Co.*, 364 N.C. at 7, 692 S.E.2d at 611 (emphasis added). Assuming the alleged facts as true, Defendant acted intentionally and there is no duty to defend nor duty to indemnify. As such, this argument is without merit.

### III. Conclusion

For the reasons stated herein, we affirm the trial court's order.

AFFIRMED.

Judges CARPENTER and GORE concur.