MIKE MILLER, GINA MILLER, ROBERT EVANS MILLER, By His Guardian ad Litem, RICHARD D. RAMSEY, AND ERICA MILLER, By Her Guardian ad Litem, RICHARD D. RAMSEY, Plaintiff-Appellees v. NATIONWIDE MUTUAL INSURANCE COMPANY, Defendant-Appellant

No. COA96-1035

(Filed 1 July 1997)

**Insurance § 725 (NCI4th)— youth firing at stop sign—hitting plaintiffs' house— youth's homeowner's liability coverage—accident—inferred intent**

The trial court did not err by granting summary judgment for plaintiffs in an action alleging that defendant insurance company was liable for damages awarded in an action which arose when the stepson of the insured homeowner fired a pistol at a stop sign and missed, the bullet entered the window of plaintiff-children's bedroom, plaintiffs suffered post-traumatic stress syndrome, a default judgment was entered against the stepson, and plaintiffs then brought this action under the stepfather's homeowner's policy, which provides coverage for injury caused by an accident without defining accident, and which has an exclusion for injury which is expected or intended. The record and defendant's brief indicate that the stepson intended to shoot a stop sign and nothing indicates that he intended to shoot at plaintiffs' home or intended to cause damage to the home or injury to plaintiffs. The incident must be viewed as an accident. Cases cited by defendant to support the contention that intent to cause harm should be inferred involve wrongful acts ranging from sexual molestation to unfair and deceptive trade practices, which are not comparable to a youth firing at a stop sign.

**Am Jur 2d, Insurance § 727.**

MILLER v. NATIONWIDE MUTUAL INS. CO.

[126 N.C. App. 683 (1997)]

**Premises liability insurance: coverage of injury sustained on or in connection with sidewalks or ways adjacent to certain named property. 23 ALR3d 1230.**

Appeal by defendant from judgment entered 26 June 1996 by Judge Donald R. Huffman in Forsyth County Superior Court. Heard in the Court of Appeals 2 June 1997.

*William M. Speaks, Jr., for plaintiff-appellees.*

*Wilson & Iseman, L.L.P., by G. Gray Wilson and Elizabeth Horton, for defendant-appellant.*

McGEE, Judge.

This case was filed subsequent to an underlying action captioned *Mike Miller, Gina Miller, Robert Evan Miller, by his Guardian ad Litem, Richard D. Ramsey, and Erica Miller, by her Guardian ad Litem, Richard D. Ramsey, v. Jeffrey Sean Rominger, Madison Paul Powell and Robert Wade Sears.* The facts of the underlying action are pertinent to the issues in this case; they show plaintiffs Mike and Gina Miller were asleep in their home about midnight on 11 December 1993 when they were awakened by the sound of a gunshot and the screams of their daughter, Erica, also a plaintiff in this case. Mike and Gina Miller discovered a shot had been fired into their childrens' upstairs bedroom window, shattering the overhead light fixture and raining broken glass and the spent bullet over the sleeping children.

The facts showed Madison Paul Powell and two friends were riding in a pickup truck in the plaintiffs' neighborhood the night of the shooting and Madison Paul Powell fired a gun at a stop sign near the plaintiffs' home. The bullet missed the stop sign and went through the window of the plaintiff children's upstairs bedroom, breaking an overhead light fixture.

Evidence in the underlying action included a report from a doctor who had diagnosed plaintiff Erica Miller as suffering from post-traumatic stress disorder. Evidence also showed Nationwide Mutual Insurance Company made no appearance in the underlying action, even though it had received a copy of the motion for judgment by default and notice of hearing.

On 8 November 1995, Forsyth County Superior Court Judge Jerry Cash Martin entered a judgment by default against Madison Paul

Powell, finding the plaintiffs were entitled to recover from Madison Paul Powell and Robert Wade Sears, jointly and severally, the sum of $40,000 in compensatory damages ($5,000 each for plaintiffs Mike, Gina and Robert Miller and $25,000 for plaintiff Erica Miller) and $100,000 in punitive damages ($25,000 for each plaintiff).

Plaintiffs subsequently filed this action against Nationwide Mutual Insurance Company (Nationwide), alleging (1) Powell is the stepson of and resided in the home of Leonard J. Brower; (2) Brower is the owner of a homeowner's policy with Nationwide; and (3) Nationwide is, therefore, liable for plaintiffs' damages. Superior Court Judge Donald R. Huffman granted plaintiffs' motion for summary judgment regarding the homeowner's policy, ruling plaintiffs are entitled to recover $100,000 from Nationwide under the terms of the policy. Nationwide appeals.

The homeowner's policy in question provides, "[i]f a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies," Nationwide will pay up to its liability limit "for the damages for which the insured is legally liable." The policy defines "occurrence" as "an accident . . . which results, during the policy period, in: a. bodily injury; or b. property damage." The policy does not define "accident."

The policy also has an exclusion provision for bodily injury and property damage "which is expected or intended by the insured."

Defendant argues that, as a matter of law, its insured's liability to the plaintiffs is not covered by the homeowner's policy because (1) the underlying incident was not an "accident" under the terms of the policy and (2) injury was so substantially certain to occur that intent to cause harm should be inferred.

In *N.C. Farm Bureau Mut. Ins. Co. v. Stox*, 330 N.C. 697, 412 S.E.2d 318 (1992), our Supreme Court interpreted the provisions for liability coverage and exclusion in a homeowner's policy with language much like the policy at issue here.

In *Stox*, the insured pushed a co-worker, causing her to fall and suffer a severe fracture of her right arm. The facts showed the insured intended to push the plaintiff, but did not intend to cause a fall or injury. The issue before the *Stox* court was whether liability for the plaintiff's injury was covered by a homeowner's liability insurance policy. *Stox* at 699, 412 S.E.2d at 320. The *Stox* court concluded

the policy covered the liability and, likewise, we conclude in this case defendant's policy covers its insured's liability.

The *Stox* court stated:

> we are guided by established rules of construction for interpreting provisions of insurance policies. Provisions . . . "which extend coverage must be construed liberally so as to provide coverage, whenever possible by reasonable construction." It is also well settled that when an insurance policy contains no ambiguity, it shall be construed according to its terms, but when ambiguity exists the policy shall be construed in favor of coverage and against the insurer who selected its language.

*Stox* at 707, 412 S.E.2d at 324-25 (citations omitted).

In *Stox*, as here, the homeowner's insurance policy used the term "occurrence" and defined it as "an accident . . . which results, during the policy period, in: a. bodily injury; or b. property damage." *Stox* at 700, 412 S.E.2d at 320. And, as in this case, the homeowner's policy at issue in *Stox* did not define the term "accident." The *Stox* court concluded, "where the term 'accident' is not specifically defined in an insurance policy, that term *does* include injury resulting from an intentional act, if the injury is not intentional or substantially certain to be the result of the intentional act." *Stox* at 709, 412 S.E.2d at 325. Based on that conclusion, we find no merit in defendant's argument that the incident at plaintiffs' home was not an accident. The record in this case, including defendant's brief, indicates Powell intended to shoot a stop sign when he fired a shot into the plaintiff children's bedroom window. Following the incident, Powell pleaded guilty to shooting within the city limits and received a 30-day suspended sentence. Nothing in the record suggests Powell intended to shoot at plaintiffs' home or intended to cause damage to the home or injury to the plaintiffs. Under *Stox*, the incident must be viewed as an accident covered by the homeowner's policy.

Defendant also argues the damage and injury suffered by the plaintiffs was so substantially certain to occur that intent to cause harm should be inferred. With this argument, defendant strives to avoid coverage under the exclusion terms of its policy. Again, like the *Stox* court, we note the rules of construction that govern insurance policy provisions: "[E]xclusionary provisions are not favored and, if ambiguous, will be construed against the insurer and in favor of the insured." *Stox* at 702, 412 S.E.2d at 321-22 (citations

omitted). Defendant has failed to show its exclusion terms apply in this case.

> The character of the insured's act did not rise to the level which would require that an intention to inflict an injury be inferred. Therefore we conclude that in order to avoid coverage on the basis of the exclusion for expected or intended injuries in the insurance policy at issue in this case, the insurer must prove that the injury itself was expected or intended by the insured. Merely showing the act was intentional will not suffice.

*Stox* at 706, 412 S.E.2d at 324.

In determining that "[m]erely showing the act was intentional will not suffice," *Id.*, the *Stox* court cited with approval *Physicians Insurance Co. v. Swanson*, 58 Ohio St. 3d 189, 569 N.E.2d 906 (1991), a case with circumstances comparable to those in this case. In *Swanson*,

> the insured, a teenage boy, shot a BB gun at a group of teenagers approximately seventy to one hundred feet away. According to the testimony of the insured, he was aiming at a sign ten to fifteen feet above the group to scare them. Unfortunately, one of the BBs struck one of the teenagers in the right eye causing him to lose that eye. The Supreme Court of Ohio held that the exclusion for bodily injury which is "expected or intended" by the insured was inapplicable. The Court reasoned:

>> "[I]n order for an exclusion of this nature to apply, an insurer must demonstrate not only that the insured intended the act, but also that he intended to cause harm or injury. The rationale for this rule of law is twofold. First, the plain language of the policy is in terms of an intentional or expected injury, not an intentional or expected act. Were we to allow the argument that only an intentional act is required, we would in effect be rewriting the policy. Second, . . . many injuries result from intentional acts, although the injuries themselves are wholly unintentional."

*Stox* at 705, 412 S.E.2d at 323 (citations omitted). Defendant has not shown its insured expected or intended injury to the plaintiffs.

Defendant attempts to draw comparisons between this case and a number of other cases in which homeowner's insurance coverage was not extended to liability for various wrongful acts by an insured

because the actions of the insured were deemed to be "substantially certain" to cause injury. Defendant goes so far as to refer to the "factual similarity" between those cases and this case. The cases defendant cites, however, involve wrongful acts ranging from sexual molestation to unfair and deceptive trade practices; they simply are not comparable to this case, which involves a youth firing a pistol at a stop sign. We think the language our Supreme Court used in *Stox* is particularly applicable here: "The character of the insured's act did not rise to the level which would require that an intention to inflict an injury be inferred." *Stox* at 706, 412 S.E.2d at 324.

No error.

Judges EAGLES and SMITH concur.