NORTH CAROLINA FARM BUREAU MUTUAL INSURANCE COMPANY, Plaintiff v. JAMES L. MIZELL and DOUGLAS W. AUSTIN, Defendants

No. COA99-947

(Filed 20 June 2000)

**Insurance— homeowner's—firing to frighten prowler—exclusion for intended acts**

The trial court did not err by granting plaintiff's motion for summary judgment in a declaratory judgment action to determine insurance coverage where plaintiff provided homeowner's insurance to defendant Mizell, who was sued by defendant Austin for personal injuries arising from Mizell's discharge of a firearm. When a person fires multiple shots from a rifle at night in the direction of a prowler who is fifty feet away, that person could reasonably expect injury or damage to result from the intentional act.

Appeal by defendants from order entered 30 April 1999 by Judge J. Richard Parker in Pitt County Superior Court. Heard in the Court of Appeals 26 April 2000.

*Harris, Shields, Creech and Ward, P.A., by C. David Creech and Charles E. Simpson, Jr., for plaintiff-appellee.*

*Gaylord, McNally, Strickland & Snyder, L.L.P., by Danny D. McNally, for defendant-appellant Mizell.*

*Ward and Smith, P.A., by Donald S. Higley, II and A. Charles Ellis, for defendant-appellant Austin.*

WALKER, Judge.

On 2 February 1998, defendant Austin filed suit against defendant Mizell seeking to recover damages for personal injuries arising out of Mizell's negligent discharge of a firearm. Plaintiff North Carolina Farm Bureau Mutual Insurance Company provides homeowner's insurance coverage to Mizell. On 10 September 1998, plaintiff filed a declaratory judgment to determine whether the insurance policy covered Mizell's alleged negligence.

In the early morning hours of 11 August 1997, Austin came to the residence of Mizell wishing to speak to Mizell's daughter. Austin was confronted outside the home by Mizell's son-in-law, who wielded a

baseball bat. Upon hearing the confrontation, Mizell came out of the house with a .38 caliber pistol and fired several shots in the air to scare Austin, who fled the premises.

About one hour later, Austin returned intending to vandalize the Mizell home. Mizell heard a vehicle stop, got out of bed and picked up his .22 caliber rifle. A rock was thrown through the window of Mizell's daughter's room. Mizell came out of his house with the rifle, saw someone running away from his home who he believed had thrown the rock. According to Mizell, he estimated he fired six shots at the ground behind the prowler and above the prowler's head. At least one of the bullets fired struck Austin in the head, injuring him.

Mizell was charged with felony assault. However, the district attorney dismissed the charges, determining that Mizell acted in a negligent manner, but not intentionally such as to commit a crime. This dismissal was based upon Mizell's statement given to the district attorney, which stated:

1. On the night of August 11, 1997, I emerged from my house and fired a rifle at a person who I believed to be a prowler.

. . .

3. I fired the rifle in the general direction of the person whom I later discovered was Doug Austin, intending to scare him but certainly not intending to hit him.

Mizell thereafter insisted that he did not intend to injure Austin.

Plaintiff's insurance policy excludes coverage for "bodily injury" or "property damage":

a. Which is intended by or which may reasonably be expected to result from the intentional act or omissions or criminal acts or omissions for one or more 'insured' persons. This exclusion applies even if:

. . .

(2) The 'bodily injury' or 'property damage' is of a different kind, quality or degree than intended or reasonably expected;

. . .

This exclusion applies regardless of whether or not one or more 'insured persons' are actually charged with, or convicted of, a crime.

The parties moved for summary judgment and the trial court granted plaintiff's motion for summary judgment, denied defendants' motion, and ordered that plaintiff "has no responsibility for coverage and has no duty to defend in any tort case involving the defendants."

Defendants argue the trial court erred in granting summary judgment for the plaintiff and denying their motion for summary judgment. Specifically, plaintiff's insurance policy covers unexpected injuries caused by intentional actions. Additionally, defendants contend there are at least factual issues to be resolved.

Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1 Rule 56(c) (1999). The party moving for summary judgment bears the burden of establishing the lack of any triable issue and may meet this burden by (1) proving that an essential element of the opposing party's claim is nonexistent; (2) showing through discovery that the opposing party cannot produce evidence to support an essential element; or (3) showing that the opposing party cannot surmount an affirmative defense. *See Roumillat v. Simplistic Enterprises, Inc.*, 331 N.C. 57, 63, 414 S.E.2d 339, 342 (1992).

The issue before this Court is whether, as a matter of law, the bodily injury inflicted by Mizell was "intended by or which may reasonably be expected to result from the intentional act" and is excluded from coverage under the policy.

The interpretation of language used in an insurance policy is a question of law, governed by well-established rules of construction. *Allstate Ins. Co. v. Chatterton*, 135 N.C. App. 92, 94, 518 S.E.2d 814, 816 (1999). The policy is subject to judicial construction only where the language used in the policy is ambiguous and reasonably susceptible to more than one interpretation. *Trust Co. v. Insurance Co.*, 276 N.C. 348, 354, 172 S.E.2d 518, 522 (1970). In such cases, the policy must be construed in favor of coverage and against the insurer; however, if the language of the policy is clear and unambiguous, the court must enforce the contract of insurance as it is written. *Id.* Ambiguity in the terms of the policy is not established simply because the parties contend for differing meanings to be given to the language. *Id.* Non-technical words are to be given their meaning in

ordinary speech unless it is clear that the parties intended the words to have a specific technical meaning. *Chatterton*, 135 N.C. App. at 95, 518 S.E.2d at 817.

Defendants cite as authority the case of *N.C. Farm Bureau Mut. Ins. Co. v. Stox*, 330 N.C. 697, 706, 412 S.E.2d 318, 324 (1992), where our Supreme Court held that an insurance policy's exclusion provision for bodily injury "expected or intended by the insured" did not apply where the insured pushed a fellow employee to the ground, injuring her. Our Supreme Court held that the employee's fractured arm was not an "expected or intended" injury within the meaning of the exclusion in the policy, because the resulting injury was not "substantially certain" to result from the insured's intentional act of pushing. Further, the *Stox* court held that a mere showing that the act was intentional will not suffice to avoid coverage under this type of exclusion provision. *Id.* at 706, 412 S.E.2d at 324.

Defendants also cite *Miller v. Nationwide Mutual Ins. Co.*, 126 N.C. App. 683, 685, 486 S.E.2d 246, 247 (1997), where this Court interpreted a homeowner's insurance policy exclusion provision for bodily injury and property damage "which is expected or intended by the insured." In *Miller*, the insured fired a gun at a stop sign near the plaintiffs' home. The bullet missed the stop sign and went through the window of the plaintiffs' house, breaking an overhead light fixture. *Id.* at 684, 486 S.E.2d at 247. Nothing in the record suggested that the insured intended to shoot at or cause damage to the plaintiffs or their home. *Id.* at 686, 486 S.E.2d at 248. This Court held that the defendant insurance company failed to show that the insured "expected or intended any injury to the plaintiffs." *Id.* at 687, 486 S.E.2d at 249.

Both *Stox* and *Miller* are distinguishable from this case. In each of those cases, the insurer failed to show that the action of the insured was expected or intended to cause injury or damage. Thus, the policy language did not preclude coverage.

Additionally, we note that plaintiff changed its policy language in 1995 such that the policy now excludes coverage for injury or damage "which may reasonably be expected to result from the intentional act . . . ." This language now suggests the application of an objective standard as opposed to the subjective language involved in previous policy interpretations. In other words, when a person fires multiple shots from a rifle at night in the direction of a prowler who is approximately fifty feet away, that person could reasonably expect injury or

damage to result from the intentional act. *See e.g., Erie Ins. Group v. Buckner*, 127 N.C. App. 405, 408, 489 S.E.2d 901, 904 (1997) (holding that "intended or expected" exclusion provision applied where insured "should have expected that punching [someone] in the face would cause injury").

Based upon the exclusion provision contained in the policy at issue, we hold the trial court did not err in granting plaintiff's motion for summary judgment.

Affirmed.

Judges MARTIN and SMITH concur.