ERIE INSURANCE EXCHANGE, PLAINTIFF-APPELLANT v. ST. STEPHEN'S EPISCOPAL CHURCH, BRIAN RUFF, AMY RUFF, AND LEVI RUFF, DEFENDANTS-APPELLEES

No. COA01-1372

(Filed 5 November 2002)

**Insurance— homeowners—exclusion—intentional acts—child playing with matches**

Summary judgment should have been granted for plaintiff-insurance company in a declaratory judgment action to determine whether a homeowners insurance policy provided coverage for property damage incurred when the insured's son started a fire while finding out if choir robes would burn. The policy contained an intentional acts exclusion which applied because the evidence indicated that a child of similar knowledge, experience, capacity, and discretion should have reasonably expected the results of his intentional acts.

Appeal by plaintiff from an order entered 26 June 2001 by Judge Orlando Hudson in Superior Court, Durham County. Heard in the Court of Appeals 21 August 2002.

*Edgar & Paul, by Patrick M. Anders, for plaintiff-appellant.*

*Brown, Crump, Vanore & Tierney, LLP, by Andrew A. Vanore, III and Christopher G. Lewis, for defendant-appellee St. Stephen's Episcopal Church.*

McGEE, Judge.

Erie Insurance Exchange (plaintiff) filed an action for declaratory judgment on 8 November 2000 seeking a judicial determination as to whether a homeowners insurance policy it issued to defendant Brian Ruff provided coverage for property damage incurred by defendant St. Stephen's Episcopal Church (St. Stephen's) in a fire. Defendants filed answers to plaintiff's complaint. Defendant Levi Ruff (Levi), the son of defendants Brian and Amy Ruff, was deposed in the present case on 2 February 2001 and on 7 April 2000 in a separate suit filed earlier based on the same facts. Defendant St. Stephen's filed a motion for summary judgment in the present action on 12 March 2001. Plaintiff filed a motion for summary judgment on 3 April 2001. Following a hearing, the trial court denied plaintiff's motion for summary judgment in an order entered 26 January 2001; the trial court granted summary judgment for defendant St. Stephen's, determining that the policy issued by plaintiff did provide coverage for the fire. Plaintiff appeals.

In his depositions, Levi testified he was at St. Stephen's with his mother and siblings for the siblings' choir practice on 1 June 1998. Levi went to an unoccupied office in the back of the church to study. While in the office, Levi found a box of matches and decided to find out if the choir robes hanging in the office closet would burn. Levi lit a match and held it up against one of the robes. The robe ignited and the flame spread to an area the size of a nickel or quarter. Levi left the room to find his mother. He told her that he would be in the office but failed to tell her about the fire. When he returned to the office, the fire had spread throughout the closet. Levi left the room again and informed the church secretary that the office was on fire. The fire caused damages in excess of $10,000 through loss of personal property and smoke and water damage to the church.

Levi also testified that he had used matches before with his parents in lighting a fire in a fireplace at home. He knew that some materials, such as baby pajamas would not burn. He also knew that carelessness with matches could result in fire and damage to property.

At the time of the fire, Brian Ruff had an insurance policy with plaintiff, which provided coverage for the Ruffs' home, their personal property, and damages to property of a third party for which the insured was liable. The policy contained the following exclusion of liability:

1. Coverage E—Personal Liability and Coverage F—Medical payments to Others do not apply to bodily injury or property damage:

    a. which is intended by or which may reasonably be expected to result from the intentional acts or omissions or criminal acts or omissions of one or more insured persons. This exclusion applies even if:

        1) the insured persons lack the mental capacity to govern their own conduct;

        2) the bodily injury or property damage is of a different kind, quality or degree then [sic] intended or reasonably expected; or;

        3) the bodily injury or property damage is sustained by a different person or entity than intended or reasonably expected.

This exclusion applies regardless of whether or not one or more insured persons are actually charged with, or convicted of, a crime.

Plaintiff argues the trial court erred in granting summary judgment for St. Stephen's and denying summary judgment for plaintiff on the issue that damage caused when Levi intentionally set fire to church property was covered under the insureds' homeowners policy. "Summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.' " *Snipes v. Jackson*, 69 N.C. App. 64, 71-72, 316 S.E.2d 657, 661 (1984) (quoting N.C. Gen. Stat. § 1A-1, Rule 56(c)). "On appeal, this Court's standard of review involves a two-step determination of whether (1) the relevant evidence establishes the absence of a genuine issue as to any material fact, and (2) either party is entitled to judgment as a matter of law." *Guthrie v. Conroy*, 152 N.C. App. 15, 21, 567 S.E.2d 403, 408 (2002) (citations omitted). The parties conceded there is no question of material fact by submitting cross-motions for summary judgment. In determining coverage issues,

    [t]he interpretation of language used in an insurance policy is a question of law, governed by well-established rules of construction. . . . [T]he policy is subject to judicial construction only where the language used in the policy is ambiguous and reason-

ably susceptible to more than one interpretation. In such cases, the policy must be construed in favor of coverage and against the insurer; however, if the language of the policy is clear and unambiguous, the court must enforce the contract of insurance as it is written.

*Allstate Ins. Co. v. Chatterton*, 135 N.C. App. 92, 94-95, 518 S.E.2d 814, 816 (1999) (citations omitted).

Plaintiff argues that the trial court should have denied coverage as a matter of law under the "intentional acts" exclusion provision of the insurance policy. In construing insurance policy exclusionary provisions, our Supreme Court has stated

> it is important to note that the rules of construction which govern the interpretation of insurance policy provisions extending coverage to the insured differ from the rules of construction governing policy provisions which exclude coverage. Those provisions in an insurance policy which extend coverage to the insured must be construed liberally so as to afford coverage whenever possible by reasonable construction. However, the converse is true when interpreting the exclusionary provisions of a policy; exclusionary provisions are not favored and, if ambiguous, will be construed against the insurer and in favor of the insured.

*N.C. Farm Bureau Mut. Ins. Co. v. Stox*, 330 N.C. 697, 702, 412 S.E.2d 318, 321-22 (1992) (citations omitted).

Case law interpreting and applying insurance coverage exclusions is varied and heavily dependent upon individual factual circumstances. Plaintiff relies on *N.C. Farm Bureau Mut. Ins. Co. v. Mizell*, 138 N.C. App. 530, 530 S.E.2d 93 (2000), in arguing that Levi's actions constitute an intentional act that excludes coverage under the policy. In *Mizell*, our Court held that an insurance policy's exclusion provision applied where the insured intentionally fired a weapon in the general direction of an intruder but did not intend to inflict injury. *Id.* at 533-34, 530 S.E.2d at 95. We stated that a person who fires a weapon at a nearby intruder "could reasonably expect injury or damage to result from the intentional act." *Id.* Our Court also noted that the policy excluded coverage for acts " 'which may reasonably be expected to result from the intentional act.' " *Id.* at 533, 530 S.E.2d at 95 (quoting the insurance policy exclusion provision). We reasoned that such language contained in the insurance policy suggested a more objective standard for examining the results of an intentional

act, rather than requiring subjective proof that the insured actually expected or intended his actions to result in injury. *Id.*

St. Stephen's also cites *Stox* in support of finding coverage under the policy. In *Stox,* our Supreme Court held the exclusionary provision for intentional acts did not apply where the insured pushed someone who fell and fractured her arm. 330 N.C. at 703-04, 412 S.E.2d at 322. The Court held that "the resulting injury, not merely the volitional act, . . . must be intended for [the] exclusion to apply." *Id.* While the insured intentionally pushed the victim in *Stox,* the Court held that the evidence did not require that an intent to inflict the resulting injury be inferred. *Id.* at 706, 412 S.E.2d at 324 ("Merely showing the act was intentional will not suffice.").

The issue of insurance exclusion provisions has been further addressed by our Court in *N.C. Farm Bureau Mut. Ins. Co. v. Allen,* 146 N.C. App. 539, 553 S.E.2d 420 (2001), where the defendant fired gunshots through a door and in close proximity of a suspected intruder, injuring the intruder. While the defendant argued that he did not intend to injure the intruder, we held the insurance exclusion applied because the "intentional act . . . was sufficiently certain to cause injury that [the defendant] should have expected such injury to occur." *Id.* at 546, 553 S.E.2d at 424.

This Court found an insurance exclusion provision to not apply in *Miller v. Nationwide Mutual Ins. Co.,* 126 N.C. App. 683, 486 S.E.2d 246 (1997), where an individual fired a gunshot at a stop sign, which entered the plaintiff's home and shattered an overhead light fixture above the plaintiff's sleeping children. We relied on *Stox* in holding that the character of the act did not require the inference of an intent to inflict an injury. *Id.* at 688, 486 S.E.2d at 249. We reasoned that the insured intended to shoot at the stop sign but did not intend to shoot into the children's bedroom window or cause the resulting harm, thus constituting an accident that was covered under the insurance policy. *Id.* at 686, 486 S.E.2d at 248. We further concluded that the acts of the insured were not substantially certain to cause injury and were distinguishable from similar cases that excluded coverage on that basis. *Id.* at 688, 486 S.E.2d at 248-49; *see also Nationwide Mut. Fire Ins. Co. v. Grady,* 130 N.C. App. 292, 502 S.E.2d 648 (1998) (holding that there was an issue of material fact regarding the intent to injure the plaintiff when the insured punched the plaintiff in the back).

We find *Mizell* and *Allen* controlling in the case before us. As in *Mizell,* plaintiff's insurance policy specifically excludes coverage for

acts "which may reasonably be expected to result from the intentional acts or omissions . . . of one or more insured persons." Applying the objective standard in *Mizell*, 138 N.C. App. at 533, 530 S.E.2d at 95, the test is whether Levi should have reasonably expected a fire to result from his actions. In articulating the test, we analogously look to the language used by our Courts in determining when a child is contributorily negligent. Children between the ages of seven and fourteen are presumed to be incapable of contributory negligence, but this presumption may be overcome. *Hoots v. Beeson*, 272 N.C. 644, 649, 159 S.E.2d 16, 20 (1968). This Court has stated that "the test of foreseeability is whether a child of similar 'age, capacity, discretion, knowledge, and experience' could have foreseen some injurious result from his or her use of the product." *Hastings v. Seegars Fence Co.*, 128 N.C. App. 166, 170, 493 S.E.2d 782, 785 (1997) (quoting *Hoots*, 272 N.C. at 649, 159 S.E.2d at 20); *see In re T.S.*, 133 N.C. App. 272, 277, 515 S.E.2d 230, 233 (1999) ("The child's discretion, maturity, knowledge, and experience interact in rebutting the presumption."). The record demonstrates that Levi should have reasonably expected the damages that resulted from his intentional act, in light of his knowledge, experience, capacity, and discretion.

Levi's testimony demonstrates that he intended to light the match and hold it up to the robe to see if the robe would burn. Levi testified that he saw the flames spread to the size of a nickel or quarter before leaving to find his mother. When asked why he ran back to the office where he had set the fire, Levi responded, "because I knew that cloth would burn pretty easily, and I ran because I wanted to get there soon enough to blow it out." Furthermore, Levi testified that his parents had shown him how to start a fire with matches and instructed him never to use them unless he was supervised. Levi also testified that he was aware of the danger of matches and the damage that could result from playing with them. This evidence demonstrates that a child of similar knowledge, experience, capacity, and discretion should have reasonably expected the results of his intentional acts. Based upon the evidence presented in the record, there is no issue of material fact concerning the application of the exclusion provision.

St. Stephen's argues that the qualifiers of the exclusion are inapplicable and do not bar exclusion in this case. First, St. Stephen's contends that the term "mental capacity" is not defined in the policy and is therefore ambiguous and void. St. Stephen's states that the term could refer to a mental deficiency or a person's cognitive reasoning based on age or maturity, thereby creating conflicting meanings.

Ambiguity in the terms of the policy is not established simply because the parties contend for differing meanings to be given to the language. Non-technical words are to be given their meaning in ordinary speech unless it is clear that the parties intended the words to have a specific technical meaning. Use of the ordinary meaning of a term is the preferred construction, and in construing the ordinary meaning of a disputed term, it is appropriate to consult a standard dictionary.

*Allstate*, 135 N.C. App. at 94-95, 518 S.E.2d at 816-17 (citations omitted).

Mental capacity is defined in *Black's Law Dictionary* as "[t]he mental ability to understand the nature and effect of one's acts." Black's Law Dictionary 199 (7th ed. 1999). The ability to understand the nature of one's acts can be the product of multiple factors, including age, experience, or mental impairment. We reject St. Stephen's argument that mental capacity should be defined to only include mental retardation or other learning disorders. Such a definition is too narrow and does not reflect the ordinary meaning of the phrase. Furthermore, the fact that mental capacity may be influenced by multiple factors does not render the phrase ambiguous as used in the policy. We decline to find the policy's use of the term "mental capacity" ambiguous and uphold this qualification.

St. Stephen's further argues that the second qualifier fails to save the exclusion because there is no evidence as to what objective an eight-year-old could intend or reasonably expect to result from his actions, thus the qualifier cannot be used to exclude results beyond those reasonably expected. St. Stephen's relies on *Mizell* in arguing that Levi did not intend to destroy the robe and could not have anticipated the results of his actions. We have previously discussed the objective test in *Mizell* and determined that a child of similar knowledge, experience, capacity, and discretion should have reasonably expected the results of Levi's intentional acts. The policy provision that excludes resulting damage that is different or greater than that intended or reasonably expected is not ambiguous and is therefore upheld.

St. Stephen's finally argues that this case involves concurrent negligent causes of loss that would nullify the exclusion. St. Stephen's contends that some of Levi's actions constitute negligence, thereby making it impossible to differentiate between the intentional or foreseeable actions and the negligent actions. Negligent acts are not

excluded by the insurance policy. "[S]ources of liability which are excluded from [a] homeowners policy coverage must be the sole cause of the injury in order to exclude coverage under the policy." *Nationwide Mutual Ins. Co. v. Davis*, 118 N.C. App. 494, 500, 455 S.E.2d 892, 896 (1995) (quoting *State Capital Ins. Co. v. Nationwide Mut. Ins. Co.*, 318 N.C. 534, 546, 310 S.E.2d 66, 73 (1986) (emphasis omitted)). In the case before us, the sole cause of the fire and the resulting damage stemmed from Levi's action of setting fire to the robe. There are no additional events that constitute concurrent causes for the fire and the resulting damage. The fact that one might also argue some of Levi's actions were negligent does not make the terms and standards of the policy ambiguous. It also does not negate Levi's intentional actions, which the policy clearly excludes. We find St. Stephen's argument unpersuasive.

We reverse the trial court's order granting summary judgment for St. Stephen's and remand for entry of an order granting summary judgment for plaintiff.

Reversed and remanded.

Judges McCULLOUGH and BRYANT concur.