AUTO OWNERS INSURANCE COMPANY, Plaintiff v. CICERO A. GRIER, THE
    BOUNTY CORPORATION, CHARTER OAK FIRE INSURANCE COMPANY AND
    VICTOR FIELDS, JR., Defendants

No. COA03-232

(Filed 6 April 2004)

**Insurance— business liability policy—coverage for shooting—
exception for intended injury**

There was sufficient evidence to support the trial court's
judgment that an insurance company was not obligated to de-
fend or indemnify its insured under a business liability policy
(Grier) for an incident in which Grier shot Fields following a
theft at Grier's business. The facts of the shooting meet the defi-
nition of expected or intended injury in a policy exclusion; while
there is an exception to the exclusion for the use of reasonable
force, there is sufficient evidence that Grier voluntarily became
the aggressor.

Appeal by defendants Cicero A. Grier and The Bounty
Corporation from judgment entered 6 December 2002 by Judge
Marvin K. Gray in Mecklenburg County Superior Court. Heard in the
Court of Appeals 18 November 2003.

*Arthurs and Foltz, by Nancy E. Foltz, for plaintiff appellee.*

*Womble Carlyle Sandridge & Rice, P.L.L.C., by Richard T. Rice
and Candice S. Wooten, for defendant appellee Charter Oak Fire
Insurance Company.*

*Jones, Hewson & Woolard, by Lawrence J. Goldman, for defend-
ant appellants Cicero A. Grier and The Bounty Corporation.*

TIMMONS-GOODSON, Judge.

Cicero A. Grier ("Grier") and The Bounty Corporation ("Bounty
Corp.") appeal from a judgment declaring that insurance policies
issued by Auto Owners Insurance Company ("Auto Owners") and
Charter Oak Fire Insurance Company ("Charter Oak") do not provide
coverage or a duty to defend Grier for an incident which occurred
on 12 September 2000. For the reasons stated herein, we affirm the
judgment of the trial court.

The pertinent facts of the instant appeal are as follows: Grier is
the chief executive officer and sole owner of Bounty Corp. Bounty

Corp. consists of three entities, a food mart, laundromat and car wash. All three entities are located on the same premises in Charlotte, North Carolina.

On the morning of 12 September 2000, Grier drove to Bounty Corp. with a loaded gun to complete his "usual chores." When Grier arrived at Bounty Corp., he noticed four figures walking toward the store. Grier recognized one of the figures as an employee who worked in the deli, but did not recognize the three men behind her. Instead of walking into the store as the employee did, the men walked past the van and stopped just a few feet behind it to talk. The men appeared to be a little older than "school age." Grier remained inside the van until the men left.

After the men left, Grier got out of his van and began to remove the coins from the vacuum machines. As Grier was emptying the last vacuum box, he saw the same three men walking toward him. At deposition Grier testified that, "I hurriedly dropped the keys into the money jug with the money that I had taken from the coin boxes, and I walked fast. I really had to walk real fast to get into the equipment room before they got to me." The men followed Grier to the equipment room and began smoking drugs directly beyond the door to the equipment room. Grier stated that he believed the men were trying to "wait me out," but Grier waited until the men moved beyond the door before he left the equipment room and asked the men to leave.

Grier approached Victor Fields, Jr. ("Fields") first, but kept his distance "to where [Fields] would not have been able to attack [him]." When asked to leave, Fields did not respond. Grier moved to the next man and told him to leave. This man did not move, but instead asked Grier for the time. After Grier responded with the time, he looked back at the equipment room and saw the third man leave the room with Grier's money and keys. Grier chased the third man, but did not catch him.

Grier returned to the store for his van to try "to cut this guy off" and bring him to the police. During his drive, Grier spotted Fields walking alongside a street. Grier pulled his gun, jumped out of his van, grabbed Fields by his jacket and told him that he was taking Fields back to Bounty Corp. to await the police. Although Fields initially resisted, Grier drove them back to Bounty Corp. and asked an employee to call the police.

Grier held Fields by the back of his jacket, with his gun drawn, while they awaited the arrival of the police. Before the police arrived, Fields "pulled out" of his jacket and turned to face Grier. Grier fired his gun at the ground to "put some distance between us." The bullet penetrated Fields's hand and leg. Fields was taken to the hospital while Grier was taken to the police station. No charges were filed against either Grier or Fields.

Grier was insured under a homeowners insurance policy provided by Auto Owners. Bounty Corp. was insured under a business liability policy provided by Charter Oak. It is uncontested that the above policies were in effect on the date in question.

Fields initiated a law suit against Grier for damages resulting from the 12 September 2000 injuries. Grier sought a declaratory judgment in Mecklenburg County Superior Court that the Auto Owners and Charter Oak policies required both insurance carriers to defend and indemnify Grier in the lawsuit filed by Fields. The trial court entered a judgment on 6 December 2002 declaring that neither policy provides coverage to Grier for the 12 September 2000 incident. Grier and Bounty Corp. appeal the trial court's declaratory judgment in favor of Charter Oak.

---

Grier and Bounty Corp.'s sole argument on appeal is that the trial court erred in denying a duty to defend and indemnify Grier under the Charter Oak insurance policy. We disagree.

The standard of appellate review of a declaratory judgment requires this Court to determine if the trial court's findings of fact are supported by competent evidence in the record. *First Union Nat'l Bank v. Ingold*, 136 N.C. App. 262, 264, 523 S.E.2d 725, 727 (1999). If this Court so finds, then "the court's findings of fact are conclusive on appeal . . . even if there exists evidence to the contrary, and a judgment supported by such findings will be affirmed." *Id.* If there is any competent evidence in the record to support the findings, the judgment must be affirmed. *Id.*

Insurance policies are contracts and as such, their provisions govern the rights and duties of the parties thereto. *Gaston County Dyeing Machine Co. v. Northfield Ins. Co.*, 351 N.C. 293, 299, 524 S.E.2d 558, 563 (2000). Where a policy defines a term, this Court must use that definition. *Id.* If the meaning of the policy is clear on its face, the policy must be enforced as written. *Id.*

AUTO OWNERS INS. CO. v. GRIER

[163 N.C. App. 560 (2004)]

The relevant provisions in Charter Oak's insurance policy are as follows:

SECTION I—COVERAGES

COVERAGE A.  BODILY INJURY AND PROPERTY
DAMAGE LIABILITY

1. Insuring Agreement

. . . .

    b. This insurance applies to "bodily injury" and "property damage" only if:

        (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory" . . . .

. . . .

2. Exclusions

This insurance does not apply to:

    a. Expected or Intended Injury

        "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

. . . .

SECTION V—DEFINITIONS

. . . .

    12. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

The dispositive issue on appeal is whether the 12 September 2000 incident is excluded from coverage under the "Expected or Intended Injury" exclusion defined above. Charter Oak may deny Grier coverage only if Fields's injury was expected or intended and did not result from Grier's use of reasonable force to protect himself or his property.

This Court has addressed similar circumstances in at least two previous cases. In *N.C. Farm Bureau Mut. Ins. Co. v. Mizell*, the insured homeowner shot a rifle in the direction of a prowler running away from his house. 138 N.C. App. 530, 531, 530 S.E.2d 93, 94 (2000). The insured stated that he intended to shoot at the ground and above the prowler's head to scare the prowler, but did not intend to hurt him. *Id.* The parties moved for summary judgment. *Mizell*, 138 N.C. App. at 532, 530 S.E.2d at 94. The trial court granted summary judgment and concluded that the insurance carrier has no responsibility for coverage. *Id.* On appeal, this Court determined that "when a person fires multiple shots from a rifle at night in the direction of a prowler who is approximately fifty feet away, that person could reasonably expect injury or damage to result from the intentional act." *Mizell*, 138 N.C. App. at 533, 530 S.E.2d at 95.

This Court later found in *N.C. Farm Bureau Mut. Ins. Co. v. Allen* that intentionally firing a handgun at another who was three feet away "was sufficiently certain to cause injury that [the insured] should have expected such injury to occur." 146 N.C. App. 539, 546, 553 S.E.2d 420, 424 (2001). In *Allen*, the insured owned an unoccupied house that had been broken into on a previous occasion. 146 N.C. App. at 541, 553 S.E.2d at 421. The insured asked his friend, Yow, to stay overnight in the home with him to guard against a future break-in. The insured took along several firearms, including two handguns and two rifles. Sometime during the night, the insured awoke and heard someone outside the house. The insured, fearing a prowler beyond the door, pointed a gun at the door and fired, striking Yow. In a declaratory judgment action, the trial court concluded that the insured's insurance carrier had no duty to defend or to indemnify the insured against Yow. *Id.* On appeal, this Court determined that the insurance policy's "expected or intended" exclusionary provision precluded coverage for Yow's injuries. 146 N.C. App. at 546, 553 S.E.2d at 424.

*Mizell, Allen,* and the instant case all have facts in common: (1) the insured intentionally carried a gun; (2) the insured admitted to shooting the victim; and, (3) the insured asserted at trial that he did not intend to harm the victim either because he accidentally discharged the gun or because he was not aiming at the victim. In *Mizell* and *Allen*, this Court determined that these facts sufficiently support the exclusion of coverage based on an "expected or intended" provision shared in both insurance policies. *Mizell*, 138 N.C. App. at 533, 530 S.E.2d at 95; *Allen*, 146 N.C. App. at 546, 553 S.E.2d at 424. Charter

Oak's policy provisions pertinent to the instant appeal also include an exclusion for "expected or intended injur[ies]." As such, we conclude that the facts alleged herein meet the definition of "expected or intended" injury. *See Mizell,* 138 N.C. App. 530, 530 S.E.2d 93; *Allen,* 146 N.C. App. 539, 553 S.E.2d 420.

The policy in question provides an exception to the exclusionary provision cited above. If the insured submits that the injury resulted from the use of reasonable force, even if the injury was "expected or intended," the exclusionary provision does not apply.

Grier asserts that because he fired the gun at the ground to "put distance" between himself and Fields, that his actions were the result of reasonable force to protect himself and his property. However, we note that "the right of self-defense is only available to a person who is without fault, and if a person voluntarily, that is aggressively and willingly, enters into a fight, he cannot invoke the doctrine of self-defense unless he first abandons the fight, withdraws from it and gives notice to his adversary that he has done so." *Juarez-Martinez v. Deans,* 108 N.C. App. 486, 492, 424 S.E.2d 154, 158 (1993) (quoting *State v. Marsh,* 293 N.C. 353, 354, 237 S.E.2d 745, 747 (1977)).

Although Grier stated that he was concerned for his safety several times in his interactions with the three men, Grier's fear did not preclude him from leaving his property alone in search of the men, and before notifying the police. Furthermore, when Grier spotted Fields walking down a street approximately 150 feet away from the original incident, he again failed to telephone the police. Instead, Grier grabbed Fields at gunpoint and drove him back to Bounty Corp. where the police were then called. There is enough evidence in the record to support a finding that Grier voluntarily became the aggressor when he forced Fields at gunpoint back to Grier's place of business, which negates Grier's ability to assert that Fields's injuries were the result of self-defense. *See Juarez-Martinez v. Deans,* 108 N.C. App. at 492, 424 S.E.2d at 158.

We conclude that there is sufficient evidence to support the trial court's judgment that Charter Oak is not obligated to defend or indemnify Grier for the incident on 12 September 2000. As such, we affirm the judgment of the trial court.

Affirmed.

Judges WYNN and McCULLOUGH concur.